## A02A0756. FREEMAN v. THE STATE.
(560 SE2d 77)

ELDRIDGE, Judge.

A Fulton County jury found Harold Freeman guilty of armed robbery, possession of a firearm during the commission of a crime, and obstruction of an officer. He appeals, claiming that the victim's on-the-scene identification of him was impermissibly suggestive and that he received ineffective assistance of counsel at trial. Upon review of the errors as enumerated, we affirm Freeman's conviction.

Viewed to support the verdict, the evidence shows that Freeman suggested to a co-defendant, Tawana Franklin, that they "go hit a lick," i.e., perpetrate a robbery. Searching for a likely victim, Freeman chose a Vietnamese gentleman, employed at the Richmond Oaks apartment complex, who was eating fried chicken outside the storage area of the complex, close to the street. Freeman and Franklin approached the victim; Freeman twice asked him for a cigarette. When the victim refused, Freeman put a gun to his back and stated, "Give it up." Freeman then handed the gun to Franklin, who held it on the victim while Freeman removed the victim's wallet as well as his black cellular telephone, stating "you ain't fixing to call no [MF] police." The couple then walked from the scene.

The victim ran to his employer's office, shouting that he had been robbed. His employer immediately called 911. The police arrived within five minutes. The victim, with the aid of his employer and another Vietnamese employee who spoke excellent English, was able to give an explanation of what had happened and what was taken. The victim gave the officers a description of the perpetrators: "One was a black male and one was a black female. He gave a clothing description, height, weight. The female, I remember a tank top. She was wearing a white tank top with a blue stripe across the body of it."

The investigating officers left the scene, and

[w]e went out and canvassed the area from the point where the crime occurred, about three blocks down, maybe more, in the area. . . . As we approached Jonesboro and Lethea Street, in front of the post office, we observed a black male

and black female at the intersection, the female fitting the same description, the white tank top and striped shirt.

The male was carrying a black cellular telephone in his hand. "Based on the testimony, well, the testimony the victim gave on the descriptions of the subjects, and the phone was one of the items taken. We stopped to further investigate due to that fact."

Freeman's co-defendant, Franklin, testified against him at trial. She testified that, after Freeman and she had robbed the victim at gunpoint and had walked away, the police "rolled up, and then they jumped out, and he [Freeman] started running." The officers gave chase; one officer testified at trial that

> while he was running, Mr. Freeman pulled from his waistband what appeared to be either a polished or chrome revolver which matched the one that was used in the armed robbery, and as he was running he kept swinging back to me, and I almost shot him, so. . . . While chasing, we called for other units to cut off his exit of escape. He was detained approximately a quarter of a mile away by other marked units along with myself. . . . [D]uring the chase, Mr. Freeman threw the weapon to the ground, and I recovered that while chasing him, also the cell phone that he had placed in his right pants pocket.

Co-defendant Franklin was also detained, and the contents of the victim's wallet — sans money — were recovered at her feet, including the victim's immigration card.

Within an hour of the initial incident, Freeman and Franklin were placed in separate patrol cars and taken back to the robbery scene. The victim unhesitatingly and separately identified each of them as the perpetrators of the armed robbery against him. He identified as his the cellular telephone recovered from Freeman's pants pocket. The contents of his wallet were returned to him. And the victim identified the weapon Freeman threw down as consistent with the one used to rob him. Thereafter, Freeman was transported to the police station, where he was given *Miranda*[1] rights and agreed to give the police a statement. He stated that he owed a drug dealer money and had robbed the victim in order to obtain cash. *Held*:

1. Freeman asserts that his one-on-one showup in the police car after he was apprehended was impermissibly suggestive and tainted the victim's identification.

(a) Freeman did not object at trial to testimony concerning this

---

[1] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

identification and consequently waived complaint about this evidence on appeal.[2] "Where an objection to evidence is raised for the first time in a motion for new trial or in this Court, nothing is presented for review."[3]

(b) Under the totality of circumstances, we do not find the showup to be so impermissibly suggestive as to give rise to a substantial likelihood of misidentification.[4] The victim was able to observe Freeman when Freeman twice asked him for a cigarette. He was also able to observe Freeman while Freeman was going through his clothing. Also, Freeman spoke to the victim about frustrating the victim's ability to telephone the police, during which time the victim was able to observe him. The complained-of showup occurred promptly after the incident. In addition, Freeman was placed in a separate patrol car from Franklin so that the association between the two would be attenuated and would not taint the identification process; notwithstanding, the victim immediately identified Freeman as the male perpetrator. Moreover, Freeman admitted that he robbed the victim and was found in possession of the cellular telephone he removed from the victim.[5] Accordingly, there was no error in the admission of the victim's identification testimony.

2. Freeman claims that he received ineffective assistance of counsel because his trial attorney failed to object to testimony from State's witnesses allegedly "bolstering" the victim. We find no error.

To establish ineffective assistance of counsel within the meaning of *Strickland v. Washington*,[6] an appellant must show not only that his counsel's performance was deficient but also that the deficient performance prejudiced his defense. Failure to satisfy either prong of the *Strickland* standard is fatal to an ineffectiveness claim, and a trial court's finding that the defendant was afforded effective assistance of counsel must be upheld unless it is clearly erroneous.[7]

From our review, the complained-of "bolstering" testimony did not warrant objection by Freeman's trial attorney. The testimony was from witnesses on the scene as to the victim's reactions and identification. As such, this evidence "bolstered" the victim only in that it corroborated the victim's version of events and was consistent with the victim's testimony. Contrary to Freeman's allegation, there was no improper testimony from any State's witnesses as to the victim's

---

[2] *Williams v. State*, 225 Ga. App. 319, 322 (5) (483 SE2d 874) (1997).

[3] *Clark v. State*, 236 Ga. App. 153, 155 (2) (510 SE2d 907) (1999).

[4] *Neil v. Biggers*, 409 U. S. 188 (93 SC 375, 34 LE2d 401) (1972); *Mercer v. State*, 268 Ga. 856, 857 (3) (493 SE2d 921) (1998); *Dodson v. State*, 237 Ga. 607, 608 (2) (229 SE2d 364) (1976). See also *Cooper v. State*, 260 Ga. 549 (2) (397 SE2d 705) (1990).

[5] *Mercer v. State*, supra at 857.

[6] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[7] *Manning v. State*, 250 Ga. App. 187, 191-192 (4) (550 SE2d 762) (2001).

credibility, i.e., opinion testimony as to whether the victim was telling the truth. Thus, Freeman's reliance on our decision in *Roberson v. State*[8] is totally misplaced. We do not find error in the trial court's conclusion that Freeman received effective assistance of trial counsel.

*Judgment affirmed. Smith, P. J., and Ellington, J., concur.*

DECIDED FEBRUARY 6, 2002 — 

*Adeline A. Johnson*, for appellant.

*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Assistant District Attorney*, for appellee.

---

[8] 214 Ga. App. 208, 210 (4) (447 SE2d 640) (1994).
[1] 15 Vt. Stat. Ann. § 1201 et seq.