A04A0236. GARLINGTON v. THE STATE.
A04A0237. HARRISON et al. v. THE STATE.
(601 SE2d 793)

MIKELL, Judge.

Appellants Swarez Garlington, Mark Harrison, and Marcus Harrison appeal their convictions by a Muscogee County jury of armed robbery and possession of a firearm during the commission of a crime. In Case No. A04A0236, Garlington challenges the sufficiency of the evidence, the denial of his plea in bar, and several of the trial court's evidentiary rulings. Garlington also argues that his trial counsel was ineffective. In Case No. A04A0237, brothers Mark and Marcus Harrison challenge the sufficiency of the evidence, the denial of their plea in bar, and several evidentiary rulings. Finding no error, we affirm.

The standard of review on appeal of a criminal conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[1] The appellant no longer enjoys the presumption of innocence, and we determine only

---

[1] (Citations and punctuation omitted.) *Parks v. State*, 257 Ga. App. 25 (1) (570 SE2d 350) (2002).

the sufficiency of the evidence.[2] We do not weigh the evidence or assess witness credibility.[3] So viewed, the evidence shows that shortly before 2:00 a.m. on October 3, 2001, in Columbus, Georgia, Robert Alonzo was robbed at gunpoint by two young men while standing at the pay phone of a Crown service station. Alonzo testified that the area was very well lit and that he had a good opportunity to see both robbers, but he focused on the one who was holding the gun to his head; that the men took his car keys, his wallet, and the money he had in his pockets; that they told him to get down on the ground and not to look at them; that he squatted in response to their command, then watched them run toward a waiting car and saw one of them sit in the front passenger seat, and the other, in the back seat. Alonzo called 911 to report the robbery as the perpetrators ran to the getaway car.

Alonzo told the 911 operator that he had been robbed by two young black men in their teens or early twenties; that they took about $200-$250 of his money; that they left the scene in a black or dark blue four-door Chevrolet Cavalier; that they had a gun; that the gunman was wearing a blue shirt with a t-shirt underneath it and khaki pants; and that he had long straight hair, which was pulled back into a ponytail.

Officer Greg Ballard of the Columbus Police Department responded to Alonzo's call within five minutes.

Alonzo's description of the gunman and the car to Officer Ballard was consistent with the information he reported to the 911 operator. Alonzo also told Officer Ballard that the gunman was 5′ 8″ tall, weighed 150 pounds, and that the gun was silver. Alonzo did not describe the other perpetrator to Officer Ballard but testified at trial that the other perpetrator had "bushy" hair and that he would recognize him if he saw him. Officer Ballard testified that Alonzo told him that the robbers took approximately $259, which consisted of $20 bills, a $10 bill, a $5 bill, and four $1 bills.

Officer Ballard reported the incident to dispatch and soon thereafter, heard a broadcast from a fellow officer, who stated that he had seen the vehicle on Victory Drive crossing into Phenix City, Alabama. Approximately 30 minutes later, Officer Ballard received a call from dispatch informing him that the Phenix City Police had stopped a car fitting the description that he had given and that one of the car's occupants fit the description of the gunman.

Lieutenant Frank Ivey of the Phenix City Police Department was the officer who stopped the car in Alabama. Lieutenant Ivey testified that he pulled the car over at 2:09 a.m. and called for backup.

---

[2] *James v. State*, 227 Ga. App. 907, 908 (1) (490 SE2d 556) (1997).
[3] Id.

Lieutenant Ivey asked the driver, Mark Harrison, for identification. The other officers requested the passengers' identification then asked them if they were carrying weapons. No one questioned any of the suspects about the robbery. The occupants were removed from the car and frisked for weapons. Lieutenant Ivey then called his dispatcher and waited for someone from the Columbus Police Department to arrive.

Officer Ballard arrived at the scene with Alonzo. Officer Ballard testified that Alonzo quickly identified the gunman, Garlington, the accomplice, Marcus Harrison, and the car. Officer Ballard recalled that Garlington matched Alonzo's description except for the fact that he was wearing a different t-shirt. However, a blue shirt was retrieved from the car that Alonzo identified as the shirt the gunman wore.

Officer Ballard testified that even though Mark and Marcus Harrison were twins, Alonzo had no problem identifying Marcus as the unarmed perpetrator. Alonzo testified that he did not recognize one of the men, later identified as Mark Harrison, whose hair was "a lot bushier" than either of the robbers, but he was able to identify the other two men with no assistance from the police. Officer Ballard testified that they recovered $239 collectively from the three suspects.

Phenix City Officer James Langley, who assisted Lieutenant Ivey at the scene, testified that he placed Marcus Harrison in his patrol car after the victim identified Marcus. Officer Langley testified that he read Marcus his *Miranda* rights while waiting for a detective from Columbus to arrive and that Marcus stated that he understood his rights. When Investigator Tom Plock of the Columbus Police Department arrived, Officer Langley informed him that Marcus had been *Mirandized.*

Investigator Plock testified that when he arrived at the scene, Garlington was no longer present, but that he questioned Mark and Marcus Harrison. Marcus initially denied being in Columbus, but upon being informed of the police broadcast identifying the car crossing into Alabama, Marcus stated, "it was someone else that robbed that boy." At that point, Investigator Plock had not disclosed the sex of the victim or that a person had been robbed, nor had the Alabama officers. Marcus also told Investigator Plock that the gun used in the robbery might still be in the car.

Investigator Plock then read Mark Harrison his *Miranda* rights, which Mark stated that he understood. Mark initially denied that he had been in Georgia that evening, but after Investigator Plock disclosed the contents of his conversation with Marcus, Mark admitted his involvement. Mark stated that he was driving and when he stopped at a red light, someone exited his car and shortly thereafter,

ran back to the car shouting "go, go" and that he immediately drove away from the scene. Investigator Plock questioned Mark and Marcus a second time at the Columbus Police Department office. They both indicated that the shirt that had been taken from the car at the scene belonged to Garlington.[4]

The appellants were found guilty of armed robbery and possession of a firearm during the commission of a crime. Garlington was sentenced to twelve years in prison for armed robbery and five years to serve consecutively for the firearm charge. Mark and Marcus were each sentenced to ten years in prison for armed robbery and five years for the firearm charge to serve consecutively.

### Case No. A04A0236

1. We address Garlington's first three enumerations of error simultaneously. Garlington argues that the evidence that linked him to the crime, his co-defendants' statements (error no. 2) and the victim's identification testimony (error no. 3), should not have been admitted, and that the remaining evidence was insufficient to support his conviction (error no. 1). We find that the evidence was sufficient to sustain Garlington's conviction.[5]

(a) *Co-defendants' statements.* Garlington argues that the trial court should have excluded his co-defendants' statements because they did not waive their *Miranda* rights. "Constitutional rights are generally considered to be personal to the accused, and they must be asserted by the one whose rights were actually infringed."[6] Therefore, Garlington lacks standing to raise this error.

Garlington also argues that under the rule in *Bruton v. United States*,[7] the court should not have allowed Investigator Plock to testify as to Mark and Marcus's statements that the shirt removed from the car was Garlington's. The *Bruton* rule "prohibits the statement or confession of a co-defendant who does not testify at a joint trial, to be used to implicate other co-defendants."[8] However, "[i]n order for the admission of a co-defendant's statements to constitute a

---

[4] When Investigator Plock questioned Garlington, he denied his involvement in the robbery and denied that he had been in Columbus earlier that evening.

[5] See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[6] *Lemley v. State*, 245 Ga. 350 (1), n. 1 (264 SE2d 881) (1980). See also *Sims v. State*, 243 Ga. 83, 85 (2) (252 SE2d 501) (1979) (a "party will not be heard to complain of the violation of another person's constitutional rights").

[7] 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968).

[8] (Citation omitted.) *Sims*, supra at 84 (1).

*Bruton* violation, the statements *standing alone* must *clearly inculpate* the defendant."[9] There was no *Bruton* violation in this case.

In their statements, neither Mark nor Marcus identified Garlington as the person who committed the robbery. They simply stated that the shirt taken from the car belonged to Garlington. This statement, alone, did not prove Garlington's guilt.[10] Moreover, "[w]here overwhelming evidence of a defendant's guilt exists apart from the statement of the co-defendant, . . . any violation of *Bruton* is harmless beyond a reasonable doubt."[11] Here the co-defendants' statements about the shirt were corroborated by Alonzo. In fact, Alonzo identified Garlington and the shirt before the co-defendants spoke to Investigator Plock. Therefore, even if there were a *Bruton* violation, it does not warrant the reversal of Garlington's conviction.

(b) *Victim's identification testimony.* Garlington next contends that the trial court erred in failing to grant his motion to suppress Alonzo's identification testimony. "The test for determining whether a due process violation occurred in cases such as this is whether the identification procedure was so impermissibly suggestive as to give rise to a [very] substantial likelihood of irreparable misidentification."[12]

> [T]he factors to be considered in evaluating the likelihood of misidentification include (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation.[13]

Alonzo testified that the area was well lit and that he had a good opportunity to see both robbers though he focused on the gunman, which evidence satisfies the first two factors. The third factor is satisfied because the description given to Officer Ballard almost

---

[9] (Citation and punctuation omitted; emphasis in original.) *Wallace v. State*, 267 Ga. App. 801, 805 (4) (600 SE2d 808) (2004).

[10] See *Thomas v. State*, 268 Ga. 135, 138 (6) (485 SE2d 783) (1997) (co-defendant's statement, that the defendant had the gun used in the crimes charged but had not fired it, standing alone, was not inculpatory, thus, no *Bruton* error was committed by its admission).

[11] (Punctuation omitted.) *Cunningham v. State*, 240 Ga. App. 92, 98 (3) (522 SE2d 684) (1999), citing *Adorno v. State*, 236 Ga. App. 588, 592 (3) (512 SE2d 703) (1999).

[12] (Citation and punctuation omitted.) *Hood v. State*, 216 Ga. App. 106, 107 (2) (453 SE2d 128) (1995).

[13] (Punctuation omitted.) *Heyward v. State*, 236 Ga. 526, 528 (1) (224 SE2d 383) (1976), citing *Neil v. Biggers*, 409 U. S. 188, 199-200 (93 SC 375, 34 LE2d 401) (1972). Accord *Rogers v. State*, 265 Ga. App. 628, 629 (1) (595 SE2d 326) (2004).

perfectly matched Garlington, except for the shirt. And when Alonzo was shown the shirt that was removed from the car later that night, he identified it as the shirt the robber wore. Officer Ballard also testified that Alonzo very quickly identified Garlington, satisfying the fourth factor. Finally, the time between the crime and the confrontation was about 30 minutes. "A pre-trial identification procedure in which only one suspect is presented to a witness presents a danger of irreparable misidentification."[14] However, after applying the five factors of *Neil v. Biggers*,[15] we find that the evidence supports the trial court's determination that there was no substantial likelihood of irreparable misidentification in this case.[16]

2. In his fourth enumeration of error, Garlington argues that the trial court erred in failing to grant his plea in bar, in which he argued that the trial was barred by double jeopardy. "The appellate standard of review of a grant or denial of a double jeopardy plea in bar is whether, after reviewing the trial court's oral and written rulings as a whole, the trial court's findings support its conclusion."[17] We find no error.

The case was originally called for trial on May 28, 2002, and a jury was selected. The State then made a *Batson* motion, in which it challenged appellants' use of strikes that resulted in 11 of the 12 jurors being African-American. The court granted the motion, finding that the appellants had not given race-neutral explanations for their strikes and dismissed the jury.[18] The plea in bar was heard on June 19, 2002. A new jury was impaneled and the trial commenced on June 24, 2002.

Jeopardy does not attach until a jury is impaneled and sworn.[19] In this case, the dismissed jury was never impaneled or sworn, thus the trial by the jury impaneled on June 24, 2002, was the only trial of the matter. Regarding Garlington's contention that the jury should not have been dismissed because the trial court improperly applied *Batson*, the record is devoid of evidence in support thereof.

---

[14] (Citation omitted.) *Rogers*, supra.

[15] Supra.

[16] See *Jackson v. State*, 260 Ga. App. 848, 850-851 (3) (581 SE2d 382) (2003) (evidence of one-on-one showup was admissible where the five factors of *Neil v. Biggers* were amply demonstrated); *Freeman v. State*, 253 Ga. App. 597, 598-599 (1) (b) (560 SE2d 77) (2002) (evidence of one-on-one showup in police car was not so impermissibly suggestive as to give rise to a substantial likelihood of misidentification).

[17] (Citation and punctuation omitted.) *Simile v. State*, 259 Ga. App. 106, 107 (576 SE2d 83) (2003).

[18] The silent strike method was not utilized during voir dire.

[19] *Alexander v. State*, 192 Ga. App. 211, 212 (384 SE2d 436) (1989).

A *Batson* challenge initiates a three-step process requiring first that the party challenging the strikes establish a prima facie inference that the strikes were exercised with racially discriminatory intent. If a prima facie case of racial discrimination is established, under the second and third steps, the burden of production shifts to the proponent of the strikes to give race-neutral reasons for the strikes, and the trial court then considers the reasons given and decides whether the challenger has proven discriminatory intent.[20]

The trial court required the state to establish a prima facie case of discrimination, and defense counsel was then instructed to give a race-neutral reason for each strike. The defense counsel gave their reasons, then the prosecution argued that the reasons were pretextual. Although not required by *Batson,* defense counsel was then given another opportunity to explain his strikes. The trial court properly conducted the *Batson* challenge.

3. In his fifth enumerated error, Garlington contends that the trial court erred in denying his motion in limine to suppress evidence from the stop of the car. Garlington states that the police had absolutely no probable cause to initiate the stop and that the only information provided to the Alabama police was that two black males had committed a robbery. We disagree.

A police officer may stop and frisk a person "if the officer has a reasonable, articulable suspicion that the person stopped has been, is, or is about to be, engaged in criminal activity. A founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing."[21] When the police receive a call to be on the lookout for a car and the car that they detain roughly fits the description given for the lookout, an articulable suspicion exists that justifies the stop.[22] In this case, Lieutenant Ivey began following the car and initiated the stop because the car matched the description in the broadcast that he received from his dispatcher. Thus, the stop was authorized.

Next, Garlington argues that the duration of the detention was illegal. "In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly,

---

[20] (Citation omitted.) *Carter v. State,* 249 Ga. App. 354, 356 (2) (548 SE2d 102) (2001).

[21] (Citations and punctuation omitted.) *Richardson v. State,* 239 Ga. App. 345, 346 (521 SE2d 239) (1999).

[22] See *McGhee v. State,* 253 Ga. 278, 279 (1) (319 SE2d 836) (1984).

during which time it was necessary to detain the defendant."[23] Lieutenant Ivey testified that after obtaining the defendants' identification, he requested additional information regarding the description of the suspects. In the meantime, the other officers present frisked the suspects because they thought that they might be armed. The information that he received was that three young black males were involved in the robbery. Neither Lieutenant Ivey nor any other Alabama officer questioned any of the suspects about the robbery nor did they mention any of the details. The suspects were detained until the officers from Columbus arrived. Officer Ballard testified that he arrived in Alabama approximately 30 minutes after the robbery occurred. Based on these facts, we do not find that the 15-to-20 minute detention and the actions taken during that detention were illegal.[24]

4. Garlington next contends that the trial court erred by commenting on the evidence in violation of OCGA § 17-8-57.[25] He references five portions of the trial transcript that contain alleged improper comments by the court. However, in each instance, Garlington did not object. "The question of whether a trial judge has violated this statute is not reached unless an objection or motion for mistrial is made."[26] Because Garlington failed to object or move for a mistrial, he has waived his right to appeal this issue.[27]

5. Garlington next argues that his trial counsel was ineffective because he failed to pursue a motion to sever Garlington's trial from that of the co-defendants. "In analyzing a claim of ineffective assistance of counsel, . . . a trial court's finding that a defendant has not been denied effective assistance of counsel will be affirmed unless clearly erroneous."[28] To establish ineffectiveness, Garlington must show that his counsel's performance was deficient and that but for counsel's deficiency, a reasonable possibility exists that the outcome of his trial would have been different.[29] An insufficient showing on

---

[23] (Citation omitted.) *King v. State*, 258 Ga. App. 872, 874 (1) (575 SE2d 679) (2002).

[24] See id. at 874-875 (1) (30-minute detention of the occupants and a vehicle, both matching the description given in a be on the lookout broadcast, was reasonable).

[25] The statute provides that
[i]t is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused. Should any judge violate this Code section, the violation shall be held by the Supreme Court or Court of Appeals to be error and the decision in the case reversed, and a new trial granted in the court below with such directions as the Supreme Court or Court of Appeals may lawfully give.

[26] (Footnote omitted.) *Brown v. State*, 246 Ga. App. 517, 522 (8) (541 SE2d 112) (2000).

[27] Id.

[28] (Citation omitted.) *Lowery v. State*, 260 Ga. App. 260 (581 SE2d 593) (2003).

[29] *Lovelace v. State*, 241 Ga. App. 774, 775 (3) (527 SE2d 878) (2000).

one part of this inquiry is fatal to the ineffectiveness claim.[30]

A motion to sever was initially filed in the trial court and then withdrawn. However, at the hearing on the motion for new trial, Garlington's counsel withdrew the ineffectiveness claim based on the failure to pursue the motion to sever on the grounds that trial counsel's decision was strategic. Therefore, we need not reach the issue as the argument was abandoned below.

### Case No. A04A0237

6. In their first, sixth, and seventh enumerations of error, Mark and Marcus Harrison challenge the sufficiency of the evidence. For the reasons stated below, we conclude that the evidence was sufficient.

(a) *Mark Harrison.* Mark argues that he was never identified as being at the scene of the crime and that there was no physical evidence placing him there. He also contends that his admission was not corroborated, and thus, should not have been admitted. We disagree.

Alonzo testified that two men robbed him, then escaped in a waiting getaway car that was driven by someone else. Within 30 minutes, a car fitting the description given by Alonzo was detained. Mark was driving the car, and the men identified as the robbers were his passengers. When the suspects were searched, the officers found $69 on Mark, $90 on Marcus, and $80 on Garlington, totaling $239, $20 less than the victim estimated had been taken but in the denominations described by the victim. This evidence, independent of Mark's statement to Investigator Plock, was sufficient to authorize Mark's conviction.

After Investigator Plock *Mirandized* Mark, Mark told Investigator Plock that he was driving and that when he stopped at a red light, someone exited his car then shortly thereafter, ran back to the car shouting "go, go," and that he immediately drove away from the scene. Mark argues that because his statement was an admission, the state was required to introduce additional direct and circumstantial evidence of his guilt. We find that the state met that burden.

(b) *Marcus Harrison.* In addition to the facts discussed in Garlington's case and those discussed above, Marcus was identified quickly by Alonzo in Alabama. Alonzo testified that he recognized Marcus's shirt and his face. We find that the evidence was sufficient to support a rational trier of fact's finding that Marcus was guilty

---

[30] See *Green v. State,* 240 Ga. App. 650, 652-653 (3) (523 SE2d 632) (1999).

beyond a reasonable doubt.[31]

Under the section of appellants' brief discussing these errors as they pertain to Marcus Harrison, Marcus asserts several other errors not related to his argument that the evidence was insufficient. "Statements in the briefs cannot enlarge or alter the scope of review to include issues not reasonably contained in the enumeration of error."[32]

7. In enumerated error nos. 2 and 8, the appellants contend that the trial court erred by failing to exclude their out-of-court statements to Investigator Plock. They argue that they were read incomplete *Miranda* warnings and that they never waived their *Miranda* rights. Specifically, they contend that the officers' failure to ask them specifically that if knowing their rights they still wished to talk to the police rendered their waivers ineffective. Consequently, they maintain that their statements should have been excluded. We disagree.

The question of whether a waiver of rights and a subsequent statement have been voluntary and knowing depends on the totality of the circumstances.[33] The standard of review on a ruling concerning a *Miranda* waiver is threefold:

> (a) if there is any evidence to support those findings, we will not disturb them; (b) the court's decisions regarding questions of fact and credibility must be accepted unless clearly erroneous; and (c) we construe the evidence to uphold the trial court's findings.[34]

During the suppression hearing, Officer Langley testified that he advised Marcus Harrison of his *Miranda* rights after the victim identified him as one of the perpetrators; that Marcus stated that he understood his rights and did not seek clarification of those rights or ask for an attorney or family member; and that he did not threaten, coerce, or make promises to Marcus, or hold out a hope of benefit to him. Marcus did not make any statements to Officer Langley. When Investigator Plock arrived, Officer Langley informed him that he had read Marcus his rights.

Investigator Plock did not repeat the *Miranda* warnings to Marcus. He testified that Marcus appeared to understand his rights, that he did not refuse to answer any questions or request that Investigator Plock stop questioning him. Further, Marcus was not coerced, threatened, promised anything, or offered the slightest hope

---

[31] *Jackson v. Virginia*, supra.

[32] (Citation omitted.) *Thomas v. State*, 226 Ga. App. 441, 445 (9) (487 SE2d 75) (1997).

[33] *Reinhardt v. State*, 263 Ga. 113, 115 (3) (b) (428 SE2d 333) (1993).

[34] (Citation omitted.) *State v. Baker*, 238 Ga. App. 802, 803 (1) (521 SE2d 24) (1999).

of benefit. Investigator Plock testified that when he questioned Marcus about an hour later, Marcus again gave a statement voluntarily.

Investigator Plock read Mark Harrison his *Miranda* rights from a card as Mark sat in a police car in Alabama and testified that Mark stated that he understood his rights. Like Marcus, Mark was not coerced, threatened, promised anything, or offered the slightest hope of benefit. When Investigator Plock questioned Mark at the police station about an hour later, he did not reread Mark's rights, and Mark did not state that he wanted to exercise any of his rights.

*Miranda*'s primary concern is whether there was a knowing and voluntary statement made after someone is informed of their rights. "Once *Miranda* warnings are given and a person in custody gives a statement to police without invoking his right to remain silent and without requesting an attorney, he has in effect waived his rights."[35] The fact that the officers did not ask the suspects if they still wanted to talk to the police after the suspects indicated that they understood their rights does not render their statements involuntary. The trial court was authorized to believe Officer Langley and Investigator Plock's testimony that both defendants were advised of their rights, that they stated that they understood their rights, and that their statements were not coerced or obtained upon the promise of reward.[36]

As stated earlier, we must accept the trial judge's determinations of fact and credibility after a suppression hearing unless they are clearly erroneous.[37] In this case, we are unable to say that the trial judge clearly erred by admitting the statements. Likewise, we cannot find the trial court's finding that Investigator Plock was not required to reread the *Miranda* rights was clearly erroneous.[38] We also reject

---

[35] (Punctuation omitted.) *Harris v. State*, 274 Ga. 422, 424 (3) (554 SE2d 458) (2001), quoting *Aldridge v. State*, 258 Ga. 75, 76 (3) (365 SE2d 111) (1988) (the defendant's refusal to sign a waiver of rights form before speaking to police did not render his statement involuntary and inadmissible), overruled on other grounds, *Smith v. State*, 263 Ga. 224, 226 (4) (430 SE2d 579) (1993).

[36] See *Chastain v. State*, 196 Ga. App. 50, 51 (2) (395 SE2d 570) (1990) (trial court found police officers' testimony credible and rejected defendant's argument that statement should not be admitted because police had not followed proper procedures); *Askew v. State*, 193 Ga. App. 61 (3) (387 SE2d 25) (1989) ("[i]t is not constitutionally required that a waiver be in writing") (citations omitted).

[37] *Davis v. State*, 245 Ga. App. 508, 510 (538 SE2d 159) (2000).

[38] See *McKenzie v. State*, 187 Ga. App. 840, 844 (4) (371 SE2d 869) (1988) (in view of continuous nature of interrogation, failure to repeat *Miranda* warnings did not render inadmissible the defendant's statement that was made one hour after initial interview was concluded); *Watson v. State*, 227 Ga. App. 698, 700 (1) (182 SE2d 446) (1971) (where there is no dispute that the defendant was apprised of his constitutional rights prior to making his first statement, no further warning was necessary before defendant's second statement which was made seven hours later under the circumstances of continued interrogation). See generally

appellants' argument that since they were 17 years of age, additional *Miranda* requirements were imposed. "Under Georgia statutes, . . . those who have reached the age of 17 are no longer considered juveniles by our criminal justice system."[39] Therefore, for purposes of *Miranda*, the appellants' statements were admissible if made voluntarily, without being induced by hope of benefit or coerced by threats.[40] This enumeration is without merit.

8. Next, appellants argue that the trial court erred by denying their plea in bar (enumerated error no. 3) and should have granted a new trial because of that error (enumerated error no. 9). We incorporate by reference our discussion in Division 2 of Garlington's case and for the reasons stated therein, these errors fail.

9. In enumerated error nos. 4 and 10, appellants assert as error the trial court's refusal to exclude the victim's identification testimony. We addressed this issue in Division 1 (b) of Garlington's case. The same analysis applies here. Accordingly, we find no error.

10. In their fifth enumerated error, the appellants argue that the trial court violated OCGA § 17-8-57 by making inappropriate comments before the jury. The Harrisons allege as error the same instances of alleged judicial misconduct that Garlington raised. Like Garlington, they failed to object or move for a mistrial when the allegedly improper comments were made. As discussed in Division 4 of Garlington's case, the failure to do so is fatal to this argument.[41]

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED JULY 1, 2004 — ▮▮▮▮▮▮▮▮▮▮

*Mark A. Casto*, for appellant (case no. A04A0236).

*Berry, Shelnutt & Day, John M. Shelnutt*, for appellant (case no. A04A0237).

*J. Gray Conger, District Attorney, Crawford L. Seals, Assistant District Attorney*, for appellee.

---

*Mainor v. State*, 259 Ga. 803, 804-805 (3) (387 SE2d 882) (1990) (trial court's finding that defendant did not have to be reread *Miranda* rights each time he was moved and questioned in different locations was not clearly erroneous since the questioning was part of a continuous interview).

[39] (Footnote omitted.) *Reynolds v. State*, 275 Ga. 548, 549-550 (3) (569 SE2d 847) (2002).

[40] Id. at 550 (3).

[41] *Brown*, supra.