## A01A0598. ROMERO v. THE STATE.

(545 SE2d 103)

MIKELL, Judge.

Ernesto Romero was convicted of burglary by a Lowndes County jury. On appeal, Romero contends the trial court erred by admitting into evidence two fingerprint cards, which had not been produced in discovery. We disagree and affirm.

"In reviewing a trial court's decision whether to impose sanctions or take other corrective action as a result of the State's failure to comply with its discovery obligations, the appropriate standard of review is whether the trial court abused its discretion."[1]

The record shows that at approximately 10:30 p.m. on July 10, 1997, Deputy Sheriff Jeff Culpepper discovered a burglary in progress and observed two suspects running away from the scene. During the investigation, fingerprints were lifted from the driver's side door of the van used in the burglary and from a cardboard box that was located at the scene. Romero and his co-defendants[2] were arrested on July 11, 1997.

Upon Romero's arrest, the intake supervisor at the Lowndes County jail took his fingerprints and palm prints. When the state sought to introduce the fingerprint cards at trial, defense counsel objected on the grounds that the cards had not been provided during discovery. The prosecutor explained that Romero's prints had been at the sheriff's office since his arrest. Romero's counsel did not dispute the fact that he knew the prints existed; he simply argued that he had not seen them. He stated: "I didn't know he was getting the one from the jail. . . . I didn't know that those would be the ones that were used for comparison." Romero's counsel also maintained that if Romero's expert witness had reviewed the cards before leaving the courtroom, he would have been able to determine whether they were of sufficient quality to compare to the other prints admitted into evi-

---

[1] *Williams v. State*, 226 Ga. App. 313, 314 (1) (485 SE2d 837) (1997).

[2] Two of Romero's three co-defendants, Caesar Fuentes and Alexi Monteagudo, were also convicted of burglary and appealed their convictions. We affirmed Fuentes' conviction at *Fuentes v. State*, 239 Ga. App. 672 (521 SE2d 698) (1999), which contains a full recitation of the facts. Monteagudo's appeal is pending.

dence. After lengthy arguments from the state and Romero's counsel, the trial court overruled the objection. After the cards were admitted, the state's fingerprint comparison expert matched them to those taken from the cardboard box and the van door.

Romero contends that the trial court erred by admitting the fingerprint and palm print cards because they had not been provided during discovery. Consequently, Romero argues, his expert, who did not testify in the case, was not able to review the cards. Finally, Romero maintains that the error was prejudicial since the prints were the main evidence that linked him to the crime scene.

OCGA § 17-16-4 (a) (3) directs the state to permit the defendant to inspect and copy papers and tangible objects that are "within the possession, custody, or control of the state or prosecution and are intended for use by the prosecuting attorney as evidence in the prosecution's case-in-chief or rebuttal at the trial. . . ." Should the prosecutor fail to do so, the trial court may order the state to permit the discovery or inspection of the papers or object, interview the witness, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the state from introducing the evidence not disclosed.[3] In addition to the foregoing, OCGA § 17-16-6 authorizes the trial court to enter any order it deems just under the circumstances to remedy the discovery violation.

> In enacting [OCGA § 17-16-6], the legislature did not impose a rigid formulation or grant an exclusive remedy for a defendant or a fatal consequence to the State for failure to comply with the discovery mandates. Instead, it cloaked the trial court with the discretion to use its own judgment to ensure a fair trial.[4]

Romero's counsel knew that the prints had been at the jail since Romero's arrest 11 months earlier. The trial court noted that since the state had an open file policy, defense counsel could have reviewed Romero's prints at any time prior to trial.[5] Further, defense counsel did not object to the testimony that Romero's fingerprints had been taken, nor did he move to exclude the fingerprint comparison charts when they were introduced into evidence. Also, Officer Walter Jackson testified that the prints had been made available to Romero's expert and to all defense counsel at a meeting held during the week

---

[3] OCGA § 17-16-6.

[4] (Citation omitted.) *Rooks v. State*, 238 Ga. App. 177, 178 (1) (518 SE2d 179) (1999).

[5] See *Roberts v. State*, 244 Ga. App. 330, 333 (3) (534 SE2d 526) (2000) (disputed evidence was properly admitted because state had an open file policy and the defendant failed to inspect the evidence).

before the trial.

In compliance with OCGA § 17-16-6, the trial court allowed defense counsel the opportunity to interview the state's fingerprint comparison expert prior to the witness' testimony. The trial court also offered Romero's counsel the opportunity to have his expert return to court, which Romero's counsel declined. Also, the transcript reflects that the trial court did not limit Romero's ability to call other witnesses to challenge the fingerprint evidence.

Before the harsh sanction of excluding evidence will be imposed by the trial court under OCGA § 17-16-6, the defendant must show both that he was prejudiced and that the state acted in bad faith.[6] Romero did not make either showing. Consequently, the trial court did not abuse its discretion, under OCGA § 17-16-6, when it admitted the prints over defense counsel's objection.

*Judgment affirmed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED JANUARY 29, 2001.

*John D. Holt*, for appellant.
*J. David Miller, District Attorney, Robert T. Gilchrist, Assistant District Attorney*, for appellee.

---

[6] *Brown v. State*, 236 Ga. App. 478, 481-482 (3) (512 SE2d 369) (1999).