A03A1689. BOYKIN v. THE STATE.
(592 SE2d 426)

JOHNSON, Presiding Judge.

Marco Boykin and Johnny Felton were indicted for several offenses which arose after they hijacked the victim's car at gunpoint and were then caught, less than an hour later, in possession of the victim's car, a bag of marijuana, and several rocks of crack cocaine. After co-defendant Felton pled guilty and testified for the state, a jury convicted Boykin of armed robbery, hijacking a motor vehicle, kidnapping, possession of cocaine with intent to distribute, and possession of marijuana. Boykin appeals, alleging the evidence was insufficient to support his convictions, the trial court erred in permitting the introduction of evidence, the trial court erred in refusing to merge two of his convictions, and he received ineffective assistance of trial counsel. We find no error, and affirm Boykin's convictions.

Viewed in a light most favorable to support the jury's verdict, the evidence shows that the victim, the owner of a Mitsubishi Montero,

---

let Boykin stay at his apartment when Boykin had little money. Around the same time, Felton began doing odd jobs for Boykin at his family's taxi business. On October 7, 1999, Boykin asked Felton to drive with him to pick up some money. Subsequently, Boykin drove into an apartment complex, gave Felton a handgun, and told Felton to take the victim's car.

Before the victim got out of his car, Felton approached him with the handgun and ordered the victim to hand over his keys, exit the Montero, and lie on the ground. The victim complied, and Felton ordered him to empty his pockets. Felton took $10, an ATM card, and a crumpled piece of paper with a PIN code on it, then drove off in the Montero. Boykin drove his car out of the parking lot and Felton followed in the Montero. After driving for some time, the cars parked side by side in a hotel parking lot. Felton left the victim's Montero and got into Boykin's car, went back to the Montero for a short time, then returned to Boykin's car.

Meanwhile, the victim reported the hijacking and a police dispatcher radioed for officers to be on the lookout for the vehicles and the hijackers. An officer in a precinct parking lot heard this dispatch and, to his surprise, saw the suspect vehicles drive into a parking lot next to where he was standing. The officer watched the vehicles and observed a man matching the description of one of the hijackers. After verifying that the Montero was, in fact, the hijacked vehicle, the officer approached Boykin's car and told the men to exit the car. An officer who assisted with the arrest saw Felton drop a handgun on the seat as he exited the car.

After Boykin and Felton were placed in police cars, the victim arrived and positively identified Felton as the armed hijacker. A search of Boykin's car revealed the loaded handgun. Officers also found a small blue bag of marijuana in the front seat, lying in plain view between where Boykin and Felton had been sitting, and seven yellow bags of crack cocaine "under the driver's side floorboard, which would have been under Mr. Boykin's feet." In addition, Felton had one rock of crack cocaine in his pocket. It was packaged like the crack cocaine found under Boykin's feet.

A detective interviewed Felton less than five hours after the hijacking incident. Felton indicated that he understood his rights and then told the detective how he and Boykin had committed the offenses. Felton specifically told the detective that Boykin gave him the handgun and ordered him to "[m]ake the man get out of his car and drive it back."

Boykin testified at trial that he was giving Felton a cab ride when Felton pulled a gun and tried to rob him. When Felton learned that Boykin had no money, Felton ordered Boykin to pull behind the Montero. After Felton left the vehicle to rob the victim, Boykin left in

an attempt to get away. When he realized Felton was following him in the Montero, he pulled into the police precinct in an attempt to get away.

1. Boykin first challenges his convictions for armed robbery, hijacking, and kidnapping, arguing that the only evidence linking him to these offenses is the uncorroborated testimony of Felton, his co-defendant. This assertion, however, ignores eyewitness testimony that placed Boykin's car at the crime scene and placed Boykin and Felton together with the victim's stolen car less than an hour after the hijacking.

"Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime."[1] And, while such a participant may not be convicted on the uncorroborated testimony of an accomplice, only slight evidence from an extraneous source identifying the accused as a participant in the crime is needed to corroborate the accomplice's testimony and support a guilty verdict.[2] In the present case, there is sufficient evidence corroborating Felton's testimony.

The victim testified that a car similar to Boykin's blocked him in at the crime scene, and the victim corroborated Felton's account of how the crimes were committed. The victim further testified that he watched Felton drive off in his Montero, following close behind the car that matched Boykin's car. An officer testified that he spotted both cars moments after hearing a dispatch alert and saw them follow each other into a hotel parking lot. The officer further testified that he saw Felton get out of the Montero, enter Boykin's car, return to the Montero, and then once again enter Boykin's car. The officer also testified about the handgun and drugs found in Boykin's car. Another officer fully corroborated the first officer's testimony. And, a detective testified about his interview with Felton, which corroborated Felton's trial testimony. Clearly, this testimony provides more than slight evidence corroborating Felton's testimony, and the evidence was sufficient to prove Boykin guilty beyond a reasonable doubt of armed robbery, hijacking, and kidnapping.[3]

Boykin contends the evidence did not support his kidnapping conviction because the victim's testimony that Felton ordered him to the ground was insufficient to support the asportation element of the kidnapping offense. We disagree. "A person commits the offense of kidnapping when he abducts or steals away any person without law-

---

[1] OCGA § 16-2-20 (a).

[2] *Shelley v. State*, 255 Ga. App. 360 (1) (565 SE2d 567) (2002).

[3] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Shelley*, supra at 361.

ful authority or warrant and holds such person against his will."[4] The distance which a kidnapper abducts his victim is without legal significance under Georgia law.[5] Only the slightest movement of the victim is required to constitute the necessary element of asportation.[6]

While Boykin correctly points out that shoving a victim without moving the victim from one location to another, or merely pushing a victim to the ground, is not sufficient to satisfy the element of asportation, he fails to acknowledge that moving the victim from a seated position on a concrete block to the dirt behind the concrete block has been held to be sufficient to show asportation.[7] Here, the victim testified that Felton approached him before he exited the Montero and told him to "get out, give me the keys, get down." The jury was authorized to conclude that Felton moved the victim from his position in the Montero to a position on the ground, and this evidence of asportation was sufficient to support the jury's finding that Boykin was guilty beyond a reasonable doubt of kidnapping.

2. Boykin claims that Felton had equal access to the cocaine and marijuana at issue in this case and that the evidence was insufficient to support his convictions for possession of cocaine with intent to distribute and possession of marijuana. He further asserts that Felton's uncorroborated testimony that he took the marijuana from the victim and that he knew nothing about the cocaine found under Boykin's feet was insufficient to authorize Boykin's drug convictions. This enumeration of error lacks merit.

Although a conviction based on joint constructive possession requires more than mere spatial proximity to the contraband, "if all occupants of a vehicle had equal access to contraband, they may be found in joint constructive possession."[8] Here, the officers testified that they found a small blue bag of marijuana in the front seat of Boykin's car, lying in plain view between where Boykin and Felton had been sitting. The officers also testified that they found seven yellow bags of crack cocaine "under the driver's side floorboard, which would have been under Mr. Boykin's feet." In addition, Felton had one rock of crack cocaine in his pocket, and this cocaine was packaged like the crack rocks found under Boykin's feet. And, Felton testified that he took the marijuana from the victim during the hijacking which Boykin arranged. This evidence authorized the finding that Boykin was in joint constructive possession of the marijuana and cocaine. The jury was authorized to conclude that Boykin was guilty

---

[4] OCGA § 16-5-40 (a).
[5] *Sharp v. State*, 255 Ga. App. 485, 487 (1) (565 SE2d 841) (2002).
[6] *Love v. State*, 190 Ga. App. 264, 265 (1) (378 SE2d 893) (1989).
[7] *Sharp*, supra; *Love*, supra.
[8] *Johnson v. State*, 248 Ga. App. 454, 455 (1) (546 SE2d 562) (2001).

beyond a reasonable doubt of possession of marijuana and possession of cocaine with intent to distribute.[9]

3. The state offered two letters that Boykin sent to Felton from jail. These letters were offered to impeach Boykin's claim that he never apologized to Felton for getting him in trouble. Boykin contends the trial court erred in allowing these exhibits into evidence, arguing that the state failed to provide these documents in compliance with his discovery requests under OCGA § 17-16-1 et seq. Because Boykin did not ask for a continuance and did not show that he was prejudiced because of this alleged discovery violation, or show that the state acted in bad faith in failing to produce these exhibits before trial, this assertion provides no basis for reversal.

OCGA § 17-16-4 (a) (3) directs the state to permit the defendant to inspect and copy papers and tangible objects that are within its possession, custody, or control and are intended for use by the state as evidence in its case-in-chief or rebuttal at trial.[10] If the state fails to comply with this Code section, OCGA § 17-16-6 provides that the trial court may order the state to permit discovery or inspection of the withheld evidence, grant the defendant a continuance, or prohibit the state from introducing the evidence.[11] However, before the harsh sanction of excluding the evidence will be imposed by the trial court, OCGA § 17-16-6 requires the defendant to show both that he was prejudiced and that the state acted in bad faith.[12] In this case, Boykin failed to make such a showing.

The state's attorney explained that the letters were not given to Boykin's counsel earlier because the state did not receive the letters until after the trial had begun. Because the state did not gain possession of these letters until after the beginning of trial and because the letters were not relevant until Boykin testified, the state did not violate the criminal discovery statute by failing to give prior notice of the letters.[13] Moreover, the record shows that Boykin did not present any evidence showing that the state acted in bad faith in failing to provide his attorney with these letters earlier or that he was prejudiced by the state's failure to provide these letters to his attorney at an earlier time. Consequently, the trial court did not abuse its discretion, under OCGA § 17-16-6, in denying Boykin's motion to exclude the letters from evidence at trial.

---

[9] *Jackson v. Virginia*, supra; *Noble v. State*, 225 Ga. App. 470, 471-472 (484 SE2d 78) (1997).

[10] See *Romero v. State*, 247 Ga. App. 724, 725 (545 SE2d 103) (2001).

[11] *Roberts v. State*, 244 Ga. App. 330, 332 (3) (534 SE2d 526) (2000).

[12] *Romero*, supra at 726; *Roberts*, supra at 333.

[13] *Potter v. State*, 272 Ga. 430, 431 (2) (530 SE2d 725) (2000).

4. Boykin contends the trial court improperly admitted one of the letters he sent to Felton without redacting certain portions which placed his character in issue. Specifically, Boykin argues the trial court should have redacted the letter's reference to a racially motivated jailhouse brawl, as well as the letter's opening salutation. However, since Boykin's trial counsel did not object to the admission of the letter on this ground or ask the court to redact the allegedly improper references, Boykin waived this issue on appeal.[14]

5. Because of the waiver issue, Boykin next asserts that his trial counsel was ineffective when he failed to object to the introduction of the letter on the ground that it contained prejudicial and irrelevant material that could have been redacted. He also contends that his trial counsel was ineffective in failing to object when the state cross-examined him about his conviction for driving with no insurance and driving with a suspended or revoked license.

To prevail on a claim of ineffective assistance of counsel, a defendant must show two things: (1) that counsel's performance was deficient, and (2) that the deficiency prejudiced the defense.[15] The trial judge, who oversaw the trial and heard the evidence presented at the hearing on the motion for new trial, makes the findings on whether the performance was deficient and whether it prejudiced the defendant, findings that this Court does not disturb unless clearly erroneous.[16] In evaluating an attorney's performance, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.[17] This presumption is "extremely difficult to overcome" when the defendant fails to call the trial attorney to testify on the motion for new trial.[18]

Here, because his trial attorney did not testify on the motion for new trial, Boykin "made no affirmative showing that the purported . . . deficiencies in his trial counsel's representation were indicative of ineffectiveness and were not examples of a conscious and deliberate trial strategy."[19] Moreover, we find no merit to Boykin's substantive arguments.

The letter was relevant because it contradicted Boykin's testimony that he never apologized to Felton for getting him into "this mess." Since the letter was admissible, the entire document was admissible even though certain comments may have incidentally

---

[14] *Shelton v. State*, 251 Ga. App. 34, 38 (4) (553 SE2d 358) (2001).

[15] *Fults v. State*, 274 Ga. 82, 83-84 (2) (548 SE2d 315) (2001).

[16] *Kilpatrick v. State*, 252 Ga. App. 900, 902 (1) (557 SE2d 460) (2001).

[17] *Rucker v. State*, 271 Ga. 426, 427 (520 SE2d 693) (1999).

[18] (Punctuation omitted.) *Morgan v. State*, 275 Ga. 222, 227 (10) (564 SE2d 192) (2002).

[19] (Citations and punctuation omitted.) Id.; see also *Green v. State*, 274 Ga. 686, 688-689 (3) (558 SE2d 707) (2002).

placed Boykin's character in issue.[20] Moreover, Boykin's character was not placed in issue by evidence showing that he has been incarcerated in connection with the case at issue.[21] As for the introduction of Boykin's prior driving convictions, the record shows that these convictions were properly admitted to impeach Boykin's testimony that he had a driver's license on the night of the hijacking. Trial counsel's failure to object, therefore, could not have constituted deficient performance.

Furthermore, because of trial counsel's failure to testify regarding these issues, we must presume that trial counsel's failure to object was a matter of trial strategy. Restraint may reasonably be seen as an issue of trial strategy, i.e., intentionally avoiding an objection which would draw the jury's attention to the witness' statement.[22] Having reviewed the record in its entirety, we find that Boykin failed to carry his burden of showing deficiency, prejudice, and harm. The trial court's finding on these issues was not clearly erroneous.

6. Contrary to Boykin's argument, his armed robbery conviction did not merge with his hijacking conviction. OCGA § 16-5-44.1 (d) specifically provides that the offense of hijacking "shall be considered a separate offense and shall not merge with any other offense."[23] This Court has repeatedly ruled that OCGA § 16-5-44.1 (d) supersedes the double jeopardy provision contained in OCGA § 16-1-7 (a).[24] In fact, when confronted with the sort of constitutional challenge Boykin is asserting, the Supreme Court recently held that the double jeopardy clause "does not prohibit additional punishment for a separate offense which the General Assembly has deemed to warrant separate sanction."[25] The trial court did not err in refusing to merge Boykin's armed robbery and hijacking convictions.

*Judgment affirmed. Eldridge and Mikell, JJ., concur.*

DECIDED DECEMBER 3, 2003 —
RECONSIDERATION DENIED DECEMBER 18, 2003 — 

*Lee W. Fitzpatrick,* for appellant.
Marco Boykin, *pro se.*

---

[20] See generally *Woodham v. State,* 263 Ga. 580, 581 (2) (439 SE2d 471) (1993); *Franklin v. State,* 224 Ga. App. 578, 579 (3) (481 SE2d 852) (1997) (physical precedent only).

[21] See *Quarterman v. State,* 223 Ga. App. 566, 567 (2) (479 SE2d 397) (1996).

[22] *Smith v. State,* 234 Ga. App. 586, 589 (1) (a) (ii) (506 SE2d 406) (1998).

[23] See *Kemper v. State,* 251 Ga. App. 665, 666 (2) (555 SE2d 40) (2001).

[24] *Campbell v. State,* 223 Ga. App. 484, 485 (2) (477 SE2d 905) (1996); *Dillard v. State,* 223 Ga. App. 405, 406 (3) (477 SE2d 674) (1996).

[25] *Mathis v. State,* 273 Ga. 508, 509 (1) (543 SE2d 712) (2001).

*Patrick H. Head, District Attorney, Henry R. Thompson, Irvan A. Pearlberg, Dana J. Norman, Assistant District Attorneys*, for appellee.