## A07A1596. BENNETT v. THE STATE.
(657 SE2d 6)

MIKELL, Judge.

Following a jury trial, Daniel Bennett was convicted of armed robbery and possession of a firearm during the commission of a crime.

---

[10] *Boone v. State*, 256 Ga. App. 220, 222 (1) (568 SE2d 91) (2002).
[11] *State v. Templeman*, 229 Ga. App. 6, 7 (492 SE2d 902) (1997).

One count of aggravated assault and a second charge of possession of a firearm during the commission of a crime were nolle prossed by the state. The trial court sentenced Bennett to fifteen years, with ten to be served in confinement and the balance on probation. On appeal from the denial of his amended motion for new trial, Bennett contends that the trial court erred in admitting certain evidence that the state failed to produce in violation of OCGA § 17-16-4, in refusing to admit evidence of a prior misidentification of Bennett, and in denying his ineffective assistance of counsel claim. We affirm.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offenses beyond a reasonable doubt.[1]

So viewed, the evidence shows that at approximately 5:00 p.m., on March 25, 2003, a young man wearing a red and black jogging suit, sunglasses, and a "do rag" on his head robbed the Colony Bay Florist in Garden City. An employee, Lisa Lugar, testified that the man mentioned that he had been in the store earlier the same day and had returned to place a delivery order, and that as she was helping him with his order, he pointed a gun at her head and said "give me the money." Lugar gave the man $191 in U. S. currency from the cash register. Lugar further testified that she recognized the man from his earlier visit; that the man purchased two roses at that time; and that he asked what time the store closed. Lugar noticed that the man had skin discoloration around his adam's apple. Lugar identified Bennett at trial.

The owner of the store, Susan Brown, testified that at the time of the robbery she was in the rear of the store and did not observe the man, but that after Lugar described him, Brown realized that she had waited on him earlier that day. Brown recalled that the man had a tattoo of a leaping tiger or lion on his arm; that he purchased two roses; that he said he would return later in the day; and that he repeatedly asked what time the store closed. According to Brown, only three people came in the store that day and made cash purchases. At trial, Brown identified Bennett as the man she had waited on.

---

[1] (Footnote omitted.) *Brown v. State*, 268 Ga. App. 24 (601 SE2d 405) (2004).

Officer Benjie Selph testified that at approximately 5:00 p.m., on March 25, 2003, he was dispatched to an armed robbery and told that the suspect had run toward Westgate Apartments, approximately 200 yards from the store. As Selph approached the apartments he observed a man who fit the physical description given by Brown and Lugar walking toward building 600. Selph noticed that the man had a panther-like tattoo on his right arm and some skin discoloration on his neck. Selph secured the area around building 600 and called for back-up. At trial, Selph identified Bennett as the man he observed walking toward building 600.

Lieutenant Don Chapman testified that he initially was dispatched to the store and then responded to Selph's call for back-up. Chapman conducted a "knock and talk" investigation of the building. When Chapman reached apartment 604, Bennett's mother answered the door and consented to a search of the apartment. When Bennett exited one of the bedrooms, Chapman noticed that he fit the description of the perpetrator. Bennett was detained and transported to the police station where he consented to a search of his bedroom. During the search, Chapman recovered various items from Bennett's bedroom, including an envelope containing $191 in U. S. currency; a loaded handgun; a "do-rag"; and a red and black hooded jogging jacket. Chapman also noticed two roses on the dining room table.

Before transporting Bennett to the police station, officers decided to bring Lugar and Brown to the scene for a showup. Both women identified Bennett. Bennett was then transported to the police station, *Mirandized*, and interviewed by Detective Mark Gunno. A videotape of that interview was shown to the jury. Bennett confessed to the robbery. At trial, Bennett admitted that he had been in the store to purchase two roses earlier in the day, but he recanted his confession, claiming that he admitted to the robbery because he believed he would go home to his family if he did. Bennett also denied that he was wearing sweat pants on March 25, 2003; however, a jail inventory list signed by Bennett and introduced by the state reflected that he was wearing blue sweat pants at the time of his arrest.

1. Bennett contends that the trial court erred in admitting invoices for the three cash sales (including Bennett's purchase of two roses) on March 25, 2003, and a copy of the jail inventory list because the state failed to produce the items ten days before trial as required by OCGA § 17-16-4 (a) (3). We disagree.

Pursuant to OCGA § 17-16-6, if the state fails to comply with reciprocal discovery requirements, the trial court may "order the state to permit the discovery or inspection, . . . grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the state from introducing the evidence not disclosed." The trial court is vested with broad discretion in fashioning remedies for violations of OCGA

§ 17-16-4.[2] "Excluding evidence is a harsh sanction and should be imposed only when there is a showing of prejudice to the defense and bad faith by the state."[3]

As to the invoices, the record reflects that defense counsel objected to the admissibility of two of the three invoices because they involved cash transactions by unidentified customers and, therefore, were irrelevant to this case. "In order to raise on appeal an impropriety regarding the admissibility of evidence, the specific ground of objection must be made at the time the evidence is offered, and the failure to do so amounts to a waiver of that specific ground."[4] Since Bennett did not object to the admissibility of the invoices on the ground that the state failed to produce them during discovery, he has waived this issue for purposes of appeal.

As to the jail inventory list, we conclude that the trial court acted within its discretion in admitting the evidence. The record reflects that the state obtained the document the morning of the second day of trial and presented it to Bennett as soon as practicable.[5] Bennett denied the trial court's offer for a continuance and has never explained how he was prejudiced by the discovery violation.[6] Accordingly, we find no grounds for reversing the trial court's ruling on this issue.

2. Bennett next contends that the trial court erred in excluding evidence that a person using his stolen driver's license received two traffic tickets in South Carolina while Bennett was incarcerated. Bennett claims this evidence should have been admitted because it supports his mistaken identity defense, in that the South Carolina officer issuing the citations mistook the driver for Bennett. We do not agree.

"It is well settled that the admission of evidence is a matter which rests largely within the sound discretion of the trial judge."[7] We find no abuse of discretion here. In *Wilkins*, we affirmed the trial court's refusal to admit the testimony of a potential witness that he was misidentified by police as the defendant and arrested, finding it

---

[2] *Rollinson v. State*, 276 Ga. App. 375, 378 (1) (b) (623 SE2d 211) (2005).

[3] (Punctuation and footnote omitted.) *Brown v. State*, 281 Ga. App. 557, 559 (636 SE2d 717) (2006). Accord *Brown v. State*, 236 Ga. App. 478, 481 (3) (512 SE2d 369) (1999).

[4] (Punctuation and footnote omitted.) *Williams v. State*, 270 Ga. App. 480, 481-482 (606 SE2d 671) (2004).

[5] See, e.g., *Browner v. State*, 265 Ga. App. 788, 793 (3) (595 SE2d 610) (2004).

[6] See, e.g., *Boykin v. State*, 264 Ga. App. 836, 840 (3) (592 SE2d 426) (2003).

[7] (Citation, punctuation and footnote omitted.) *Wilkins v. State*, 261 Ga. App. 856, 859 (4) (583 SE2d 905) (2003).

irrelevant to any material fact at issue in the case.[8] Likewise here, evidence that an unidentified police officer in South Carolina mistook an unidentified individual for Bennett was irrelevant where both persons present in the store during the robbery identified Bennett at the showup and again at trial as the perpetrator. "[G]enerally[,] the best method of attacking the credibility of an eyewitness' identification is by cross-examination."[9] Even assuming the trial court abused its discretion in excluding the evidence, however, any error was harmless in light of the overwhelming evidence against Bennett.

3. Finally, Bennett contends that trial counsel was ineffective for failing to call a witness necessary to his defense. While Bennett enumerates this alleged error and extensively cites the proper standard of review, he completely fails to identify the witness, and presents no argument, reference to the record, nor citations of authority as to this contention. Accordingly, pursuant to Court of Appeals Rule 25 (c) (2), we deem this enumeration abandoned.[10]

Even if Bennett did not abandon this error, we find it meritless. To succeed on his claim of ineffective assistance, Bennett must show that counsel rendered deficient performance and that actual prejudice resulted.[11] "A petitioner has suffered actual prejudice only where there is a reasonable probability . . . that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[12]

At the hearing on his amended motion for new trial, Bennett testified that he wanted defense counsel to call his girlfriend to rebut the state's claim that at some point on March 25, 2003, she and Bennett had been arguing over the phone about money. Regardless of whether Bennett's girlfriend's testimony was relevant to his defense, she never appeared before the trial court and no proffer of her testimony was made at the motion for new trial hearing. Absent a proffer of what an alleged witness's testimony would have been at trial, an appellant cannot show that there is reasonable probability

---

[8] Id. at 858-860 (3)-(4). See also *Warren v. State*, 158 Ga. App. 533, 534 (2) (281 SE2d 291) (1981) (exclusion of evidence that appellant was misidentified by police on two unrelated occasions was not error where victims in instant case positively identified appellant at a lineup and at trial).

[9] (Citations, punctuation and footnotes omitted.) *Wilkins*, supra at 860 (4).

[10] "Any enumeration of error which is not supported in the brief by citation of authority or argument may be deemed abandoned." Court of Appeals Rule 25 (c) (2). See also *Clark v. State*, 285 Ga. App. 182, 183 (1) (645 SE2d 671) (2007).

[11] See *Corbett v. State*, 277 Ga. App. 715, 719 (2) (627 SE2d 365) (2006).

[12] (Citation omitted.) Id.

that the outcome of the trial would have been different had defense counsel taken the suggested course.[13] Accordingly, this claim fails.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED JANUARY 8, 2008.

*David M. Burns, Jr.*, for appellant.

*Spencer Lawton, Jr.*, District Attorney, *Ronald M. Adams*, *Christine S. Barker*, Assistant District Attorneys, for appellee.

---

[13] Id. at 720 (2). See also *Dickens v. State*, 280 Ga. 320, 321-323 (2) (627 SE2d 587) (2006) (counsel's testimony and/or defendant's testimony about potential witness's expected statements cannot be used to establish claim of ineffective assistance of counsel).