A08A1050. MURRAY v. THE STATE.
(667 SE2d 382)

MIKELL, Judge.

Based on acts committed against his 15-year-old stepdaughter, Wayne Leon Murray was convicted of aggravated assault with intent to rape (Count 1), child molestation (Counts 2 and 3), attempted aggravated child molestation (Count 4), and cruelty to children (Counts 5 and 6). The trial court sentenced Murray to a total of 25 years to serve and 15 years on probation. On appeal following the denial of his motion for new trial, Murray contends that the evidence is insufficient to support his conviction on the first four counts; that photographs of the victim should have been excluded from evidence due to the state's discovery violation; that evidence related to a prior battery should not have been admitted as a similar transaction; and that his motion for severance of offenses was improperly denied. We find no merit in these claims of error and affirm Murray's conviction.

1. Murray contends that the evidence is insufficient to support his conviction on the first four counts.

---

When a criminal defendant challenges the sufficiency of the evidence supporting a conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys a presumption of innocence. We do not weigh the evidence, judge the credibility of witnesses, or resolve evidentiary conflicts. The relevant question for this court is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. As long as there is some competent evidence to support each element necessary to make out the state's case, the jury's verdict will be upheld.[1]

So viewed, the evidence shows that on September 10, 1999, the victim, who lived in an apartment with her mother and Murray, went home after orientation for a job to take a shower. Murray, who had been sitting outside, ran into the home and began yelling at the victim to get out of the shower. Murray came into the bathroom, and the victim stood behind the shower curtain. She told Murray to leave so that she could get dressed. Murray ripped down the curtain, and the victim ran into her room. Murray came up behind her, ripped off her shorts, tried to choke her and threatened to kill her. He grabbed her arm, pushed her to the floor, kept her pinned down, tried to open her legs, and tried to rape her. The victim testified: "He was asking me if I was going to let him do it. Open my legs. My legs were closed together. I was locking them. In order for me to release my legs, he would hit me or bite me or whatever he needed to do."

Murray pushed her head down toward his genital area, put his mouth on her breast, and put his hands on her breast and genital area. She fought back. He called her a liar and a whore. Murray also rammed her head into the floor. The incident, which lasted over an hour, finally ended when the police arrived. A neighbor had called 911 to report screaming.

Officer Milton Lane of the Smyrna Police Department testified that when he arrived, he heard screaming and entered the apartment. Lane observed Murray wearing nothing but underwear and a blood-stained T-shirt. The victim was naked, sobbing, and on the ground. The victim's head was covered in blood; her face, ears, and forehead were swollen, and her lips were bleeding. Lane placed Murray in handcuffs.

The victim was taken to the hospital, where emergency room physician Baber Rathur treated her for multiple contusions and abrasions on her head and arms, as well as a puncture wound on her

[1] (Citation and punctuation omitted.) *Mobley v. State*, 279 Ga. App. 476-477 (1) (631 SE2d 491) (2006).

left wrist. Dr. Rathur also observed tenderness in her right chest wall and her abdominal wall.

(a) As to Count 1, aggravated assault with intent to rape, Murray argues that the state failed to prove that he intended to rape the victim. We disagree. The essential elements of this offense are, simply, an assault which is aggravated by an intention to rape the victim.[2] "Intent to rape is a jury question. It need not be declared expressly but may be inferred by the jury from the circumstances of the case."[3] The circumstances in this case show that Murray attacked his stepdaughter and ripped off her shorts, tried to force her legs open, asked if she was "going to let him do it," and beat her bloody when she refused. She was on the floor, naked and sobbing, when the police arrived, while Murray was in his underwear. A jury's finding that a defendant possessed the requisite criminal intent will not be disturbed on appeal unless it is contrary to the evidence and clearly erroneous.[4] Here, the evidence amply supports the jury's finding that Murray assaulted the victim with the intent to rape her.

(b) Murray also contends that the evidence adduced at trial was insufficient for the jury to find him guilty of child molestation or attempted aggravated child molestation because there was no evidence that he molested his stepdaughter with the intent to arouse or satisfy either his own sexual desires or those of the victim, which is an essential element of each offense.[5] "Intent, which is a mental attitude, can be inferred, and the law accommodates this."[6] "In determining the intent with which an act is done, the jury may consider the defendant's words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted."[7] In the case at bar, whether Murray had the requisite intent when he grabbed the victim's head and pushed it toward his genitals, put his hands on her genital area and breast, and put his mouth on her breast, was an issue for the jury to resolve.[8] We will not disturb the jury's factual finding.[9]

2. Murray next complains that the trial court erred in overruling his objection to the introduction of seven photographs of the victim's

---

[2] *Goodall v. State*, 277 Ga. App. 600, 602 (1) (a) (627 SE2d 183) (2006).

[3] Id. at 602-603 (1) (a) (evidence that defendant jammed victim's head into his groin, tore off her shorts and underwear, and tried to put his hand "inside of her" supported jury's finding that defendant had the required intent).

[4] *Strozier v. State*, 254 Ga. App. 528, 529 (1) (562 SE2d 832) (2002).

[5] OCGA § 16-6-4 (a), (c).

[6] (Punctuation and footnote omitted.) *Collins v. State*, 276 Ga. App. 358, 359 (1) (623 SE2d 192) (2005).

[7] (Citation omitted.) *Phillips v. State*, 269 Ga. App. 619, 629 (8) (604 SE2d 520) (2004).

[8] See *Andrew v. State*, 216 Ga. App. 427, 428 (454 SE2d 542) (1995).

[9] *Collins*, supra at 359-360 (1).

injuries because the state failed to produce them ten days before trial, as required by OCGA § 17-16-4 (a) (3). Because Murray did not ask for a continuance and did not show that he was prejudiced because of this alleged discovery violation, or that the state acted in bad faith, this claim of error provides no basis for reversal.[10]

The record shows that Murray elected to proceed under the reciprocal discovery provisions of OCGA § 17-16-1 et seq. by serving written notice on the state, as required by OCGA § 17-16-2 (a). Thus, the state was required, "no later than ten days prior to trial," to disclose to Murray all "photographs ... within the possession, custody, or control of the state or prosecution ... intended for use by the prosecuting attorney as evidence in the prosecution's case-in-chief or rebuttal at the trial."[11] In this case, the photographs were not shown to Murray until trial. Pursuant to OCGA § 17-16-6, if the state fails to comply with reciprocal discovery requirements, the trial court may "order the state to permit the discovery or inspection, . . . grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the state from introducing the evidence not disclosed." The trial court is vested with broad discretion in crafting remedies for violations of OCGA § 17-16-4,[12] and the exclusion of evidence is a harsh sanction which will not be imposed unless the defendant shows both that he was prejudiced and that the state acted in bad faith.[13]

Here, Murray has not made either showing. First, he did not argue at trial that he was prejudiced because of this alleged discovery violation, and he will not be heard to do so for the first time on appeal.[14] Moreover, the trial court made a finding that the state's failure to produce the photographs was not done in bad faith, and this finding is not contradicted by the evidence.[15] After Murray objected to the admission of the photographs, the prosecutor stated that she did not send copies of them because the quality was poor and "they do not copy." Although the state's disclosure certificate filed with the court did not reveal that the photographs were available for inspection or copying, the prosecutor stated that the certificate in her file did indicate that the photographs were available. Because the

---

[10] See *Boykin v. State*, 264 Ga. App. 836, 840 (3) (592 SE2d 426) (2003).

[11] OCGA § 17-16-4 (a) (3) (A).

[12] See *Bennett v. State*, 289 Ga. App. 110, 112 (1) (657 SE2d 6) (2008); *Brown v. State*, 281 Ga. App. 557, 559 (636 SE2d 717) (2006).

[13] See *Romero v. State*, 247 Ga. App. 724, 726 (545 SE2d 103) (2001). Accord *Bennett*, supra at 113 (1); *Brown*, supra.

[14] See *Carter v. State*, 253 Ga. App. 795, 798 (2) (560 SE2d 697) (2002).

[15] See, e.g., *Glenn v. State*, 278 Ga. 291, 296 (5) (602 SE2d 577) (2004) (no evidence contradicted trial court's finding that Georgia Bureau of Investigation audiotape was not hidden in bad faith).

520

photographs were mentioned in the police report, which was produced to Murray, the prosecutor assumed that defense counsel was aware of them. It thus appears from the record that the state's failure to make the photographs available was inadvertent and not in bad faith, supporting the trial court's conclusion.

In addition, the court did not rule on the objection until the day after the state made the defense aware of its intent to introduce the photographs. After permitting the victim to identify the photographs, the court recessed the trial for the day. After the overnight recess, the court offered defense counsel the opportunity to review the evidence further. Counsel declined, and stood on his objection. "[A] defendant is obliged to request a continuance to cure any prejudice which may have resulted from the [s]tate's failure to comply with the requirements of the reciprocal discovery act."[16] Here Murray did not request a continuance, did not argue that he was prejudiced by the state's failure to produce them sooner, and has not demonstrated that the state acted in bad faith. Consequently, the trial court did not abuse its discretion, under OCGA § 17-16-6, in denying Murray's motion to exclude the photographs from evidence at trial.

3. Murray next contends that the trial court abused its discretion in granting the state's motion to admit evidence of his improper touching of an 18-year-old girl as a similar transaction and in denying his motion for mistrial after the similar transaction witnesses testified. We disagree.

Similar transaction evidence is admissible if (1) it is introduced for a proper purpose, (2) sufficient evidence shows that the accused committed the independent offense, and (3) a sufficient connection or similarity exists between the independent offense and the crime charged so that proof of the former tends to prove the latter.[17] In the case at bar, the trial court ruled that the incident, in which Murray was charged with simple battery, would be admissible for the limited purpose of showing Murray's bent of mind.

On appeal, Murray argues that the incident was improperly admitted because it was not sufficiently similar to the crimes for which he was on trial. However, "[a]n appellate court will not disturb the findings of the trial court on the issue of similarity or connection of similar transaction evidence unless they are clearly erroneous. And, the proper focus is on the similarity of the prior incident[ ] to

---

[16] (Citation omitted.) *Hayes v. State*, 249 Ga. App. 857, 863 (4) (549 SE2d 813) (2001). Accord *Brown*, supra at 559-560.

[17] See *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991).

the crimes charged, not their differences."[18] Moreover, courts are most liberal in admitting similar transactions in cases involving sexual offenses.[19] In this case, the similar transaction witness, L. H., testified that on June 25, 1999, she and two friends were at the pool of the apartment complex where Murray resided, putting their feet in the water. Murray was in the pool, and he tried to coax them to enter the pool. The girls declined, and then Murray grabbed L. H.'s leg near her knee and tried to pull her in. She said, "don't touch me," and her friends said to leave her alone. Murray began cursing, calling them "B's and ho's." The police were called; the responding officer testified that she arrested Murray and charged him with simple battery. Following this testimony, Murray moved for a mistrial, arguing that the testimony did not show similarity to the charged offenses. The state countered that the testimony showed Murray's bent of mind toward touching young girls inappropriately. The trial court denied the motion for mistrial.

On appeal, Murray cites *Perry v. State*[20] for the proposition that the battery of the 18-year-old girl had no logical connection to the violent offenses against the victim in this case in order to establish the requisite similarity. In *Perry*, we held that evidence that defendant had engaged in nonforcible sexual intercourse with a 13-year-old girl was not sufficiently similar to the violent rape of an adult female victim in order to be admissible at the rape trial as a similar transaction.[21] *Perry*, however, is inapposite. "In numerous cases, this Court has held that there is no per se rule whereby evidence of a sexual offense involving an adult victim is always inadmissible in cases in which the sexual offense was perpetrated on a minor."[22] In this case, Murray was charged with, inter alia, child molestation and child cruelty for inappropriately touching a 15-year-old girl and calling her a "whore" and a "bitch." The similar transaction evidence showed that he inappropriately touched a young woman and called her similar sexually repulsive names. "Under these circumstances, we find no abuse of discretion in the trial court's decision to admit the similar transaction evidence."[23] And, because

---

[18] (Citations and punctuation omitted.) *Grier v. State*, 290 Ga. App. 59 (1) (658 SE2d 827) (2008). See also *Mooney v. State*, 266 Ga. App. 587, 591 (2) (597 SE2d 589) (2004).

[19] See *Kingsley v. State*, 268 Ga. App. 729 (1) (603 SE2d 78) (2004).

[20] 263 Ga. App. 670 (588 SE2d 838) (2003).

[21] Id. at 671 (2).

[22] (Punctuation omitted.) *Kingsley*, supra at 730 (1), citing *Barrett v. State*, 253 Ga. App. 357, 358 (1) (559 SE2d 108) (2002).

[23] (Footnote omitted.) *Sands v. State*, 291 Ga. App. 639, 642 (662 SE2d 374) (2008).

the evidence was properly admitted, the trial court did not abuse its discretion in denying the motion for mistrial.[24]

4. Finally, Murray argues that the trial court abused its discretion in denying his motion to sever Count 6, the second of two counts of cruelty to children, from the trial of the remaining offenses. We disagree.

> Severance is required if offenses are joined solely because they are similar in nature. Severance is not mandated, however, where the similarity of the offenses is coupled with evidence of a pattern which shows a common motive, plan, scheme, or bent of mind. Where the modus operandi of the perpetrator is so strikingly alike, that the totality of the facts unerringly demonstrate and designate the defendant as the common perpetrator, the offenses may be joined — subject to the right of the defendant to severance in the interests of justice. Severance in this particular kind of circumstance lies within the sound discretion of the trial judge.[25]

"[W]here the evidence of one crime would be admissible as a similar transaction in the trial of the other crime, or where the similarity of the offenses manifests a pattern, the trial court does not abuse its discretion in denying the motion for severance."[26]

There was no abuse of discretion in the instant case. The evidence as to Count 6 shows that less than one month before the incident in the apartment, the victim left the home, locked the door, and walked to a nearby shopping center. Murray was not home when she left. He appeared at the shopping center shortly afterward, pulled the victim out of a store, and began shouting and cursing at her. Murray hit her in the face with his closed fist, and kicked her in the leg as they walked home. At home, Murray choked her, called her names, and rammed her head against the wall into two pictures that were hanging there, breaking the glass frames. The evidence as to Count 5 shows that Murray beat the victim, rammed her head into the floor, called her vile names, threatened to kill her, and choked her. The evidence as to Counts 5 and 6 was strikingly similar and

---

[24] See *Smith v. State*, 263 Ga. App. 76, 81 (3) (587 SE2d 226) (2003).

[25] (Citations and punctuation omitted.) *Loyless v. State*, 210 Ga. App. 693, 695 (3) (436 SE2d 814) (1993).

[26] (Citations omitted.) *Bolton v. State*, 258 Ga. App. 581, 582 (1) (574 SE2d 659) (2002).

reflected a pattern of criminal conduct toward the child.[27] Further, "the offenses charged were not so numerous or the evidence so complex that, prior to trial, the court could find that the trier of fact would be unable to distinguish the evidence and apply the law intelligently as to each offense."[28] It follows that the trial court did not abuse its discretion in denying the motion for severance of offenses.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED SEPTEMBER 11, 2008.

*David J. Koontz*, for appellant.

*Patrick H. Head, District Attorney, Eleanor A. Dixon, Dana J. Norman, Assistant District Attorneys*, for appellee.

---

[27] See *Wright v. State*, 259 Ga. App. 74, 77-78 (3) (b) (576 SE2d 64) (2003) (severance properly denied where evidence reflected a pattern of deviant conduct toward family members).

[28] (Citation and punctuation omitted.) *Loyless*, supra at 695 (3).