722 N.W.2d 254 (2006)
PEOPLE of the State of Michigan, Plaintiff-Appellant,
v.
CHRISTOPHER GREENFIELD, Defendant-Appellee.
Docket No. 264879.
Court of Appeals of Michigan.
Submitted February 7, 2006, at Detroit.
Decided June 29, 2006, at 9:00 a.m.
Released for Publication October 2, 2006.
*255 Michael A. Cox, Attorney General, Thomas L. Casey, Solicitor General, David G. Gorcyca, Prosecuting Attorney, Joyce F. Todd, Chief, Appellate Division, and Marilyn J. Day, Assistant Prosecuting Attorney, for the people.
Michael J. McCarthy, P.C. (by Michael J. McCarthy), Redford, for the defendant.
Before: MURRAY, P.J., and MARK J. CAVANAGH and SAAD, JJ.

ON RECONSIDERATION
SAAD, J.
The prosecution appeals by leave granted the circuit court's order that affirmed the district court's suppression of evidence of two DataMaster breath alcohol test results as a discovery sanction and that excluded the results from trial. We reverse.

I. Nature of the Case
The district court's discovery order required the prosecution to produce a booking videotape of defendant's DataMaster breath tests, and the court issued a discovery sanction for the prosecution's failure to comply with its order. These orders raise two legal issues under Michigan's reciprocal criminal discovery rule, MCR 6.201: Is the videotape the type of discovery expressly permitted under MCR 6.201 and, if not, may the trial court order the discovery of such material absent a showing of good cause?
We hold that the district court and circuit court erred because (1) our Supreme Court has clearly held that discovery in criminal cases is governed by MCR 6.201, (2) the subject matter of the district court's discovery order, the booking room videotape, does not come within the class of discoverable material permitted by the rule, and (3) defendant failed to establish "good cause" for the discovery under MCR 6.201(I). Therefore, because the district *256 court erred as a matter of law in ordering this discovery, it abused its discretion when it suppressed the test results as a discovery sanction. Accordingly, we reverse the circuit court's affirmance of these rulings and its order that excluded the test results from trial.

II. Facts and Procedural History
On September 29, 2004, defendant nearly collided with an Oakland County Sheriff's patrol car at an intersection in Oakland Township. Sergeant Anthony Spencer stopped defendant and issued him a citation for his failure to yield the right of way. Defendant admitted that he had recently consumed "a beer," and the officer observed that defendant appeared flushed and that his eyes were glassy. Accordingly, another Oakland County Sheriff's officer, Deputy Michael Marohn, administered a preliminary breath test, and, on the basis of the test result, the officers arrested defendant for operating a motor vehicle while under the influence of intoxicating liquor (OUIL).
The deputy sheriffs drove defendant to the Rochester Police Department and took him to the booking room. Deputy Marohn then read defendant his chemical test rights, watched defendant's conduct for 20 minutes, and conducted two DataMaster breath tests. The tests showed that defendant had a breath alcohol content of 0.11 grams of alcohol per 210 liters of breath. Deputy Marohn also observed that defendant's speech was impaired, that his eyes were glassy and bloodshot, and that he smelled of intoxicants. Thereafter, the prosecution charged defendant with OUIL, third offense, a felony pursuant to MCL 257.625(1) and (9).
Unbeknownst to the Oakland County deputy sheriffs, the Rochester Police Department had recently equipped its booking room with a video recording system that was designed to turn on and record when motion sensors detected someone in the room. The system operated on a continuous loop, and, when the tape was full, the system automatically recorded over previous video. Certain testimony suggested that the video system did not work properly at the time of defendant's arrest and that the system may have recorded over the tape of defendant's booking as early as two days after the booking, but other testimony indicated that the system may not have recorded over the tape of defendant's booking for approximately two weeks. In other words, the record evidence is inconclusive about when the recording of defendant's chemical breath tests may have been erased.
On October 5, 2004, defense counsel sought discovery from the prosecution of numerous items of evidence, including "[a]ny videotapes or audio recordings made of the stop, investigation, arrest and post-arrest activity including the booking procedure, advice of rights, and chemical testing." The record reflects that, within five days of defense counsel's request, the assistant prosecutor asked the police department to turn over the DataMaster logs and any in-car video that might exist, but, because she was unaware of the booking room video, she did not ask for a booking video. Indeed, it is undisputed that neither defense counsel nor the prosecution, nor even the Oakland County Sheriff's office, learned of the possible existence of a recording from the booking room until defendant's preliminary examination on November 2, 2004.[1] On November 3, 2004, the district court issued the disputed order *257 for discovery that granted defense counsel the opportunity to watch the video of defendant's DataMaster tests before November 10, 2004. However, on November 2, 2004, the Rochester Police Department, having searched its records at defense counsel's request, prepared a letter that said that the oldest video it had was recorded on October 8, 2004, which was several days after defendant's arrest.
On November 30, 2004, at defendant's request, the district court suppressed the DataMaster test results on the grounds that the prosecution had failed to abide by the court's November 3, 2004, order for discovery and had failed to comply with defense counsel's discovery request. The prosecution raised the issue again in the circuit court, where it moved to admit the DataMaster test results at trial. However, on August 11, 2005, the circuit court issued a written opinion that affirmed the district court's suppression of the DataMaster results pursuant to MCR 6.201(J).

III. Scope of Discovery in Criminal Cases
Unlike in civil litigation, in which the court rules permit far-reaching discovery[2] limited only by the relevancy of the information sought and whether it "appears reasonably calculated to lead to the discovery of admissible evidence,"[3] discovery in criminal cases is constrained by the limitations expressly set forth in the reciprocal criminal discovery rule promulgated by our Supreme Court, MCR 6.201.[4] Indeed, in a unanimous opinion authored by Justice Cavanagh, our Supreme Court has plainly stated that MCR 6.201 governs and defines the scope of criminal discovery in Michigan. People v. Phillips, 468 Mich. 583, 588-589, 663 N.W.2d 463 (2003), citing Administrative Order No. 1994-10.
In Phillips, our Supreme Court unequivocally held that MCR 6.201 controls "`discovery in criminal cases heard in the courts of this state.'" Phillips, supra at 588, 663 N.W.2d 463, quoting AO 1994-10. In clarifying what is subject to discovery under Michigan's criminal discovery rule, our Supreme Court held that either the subject of the discovery must be set forth in the rule or the party seeking discovery must show good cause why the trial court should order the requested discovery. Absent such a showing, courts are without authority to order discovery in criminal cases. Specifically, the Phillips Court ruled that MCR 6.201 does not permit a trial court to compel the defendant to produce a written report of an expert witness when the report did not already exist. Phillips, supra at 584, 593, 663 N.W.2d 463. In reviewing the trial court's original order, the Supreme Court ruled that the plain language of MCR 6.201 does not allow discovery of the reports. The Phillips Court had originally remanded the case to the trial court for a "good cause" determination under MCR 6.201(I). After the Supreme Court remanded the case, and after the trial court made its "good cause" ruling, the Supreme Court held that the trial court erred when it concluded that the prosecution had established good cause why the trial court should modify *258 "the requirements and prohibitions" of MCR 6.201 and permit the discovery of the reports. The Supreme Court made clear that the failure to comply with a discovery request or order is simply not "good cause" to permit the discovery of information to which a party is not otherwise entitled under the court rule. Therefore, the Court reversed the trial court's order that required the defendant to produce the reports. The reports were simply not discoverable under Michigan's reciprocal discovery rule. Because the trial court ordered discovery that was not permitted under any section of MCR 6.201, the Court affirmed this Court's reversal of the trial court's order as a matter of law, holding that unless the rule requires production of the information or the party seeking discovery shows good cause, a trial court is without authority to mandate discovery.[5]Phillips, supra at 593, 663 N.W.2d 463.
We agree with the prosecution that, under Phillips, because the videotape does not fall under any category of mandatory discovery under MCR 6.201, and because defendant made no showing of good cause, the district court erred as a matter of law in ordering the production of the tape, it abused its discretion when it suppressed the DataMaster test results as a sanction for violating its erroneous discovery order, and the circuit court repeated both errors. Accordingly, we reverse.

IV. Analysis

A. Mandatory Discovery
In early October 2004, defense counsel made a general discovery request for any videotapes of the arrest and post-arrest activities. The version of the reciprocal discovery rule in effect at the time of defendant's discovery request provided, in relevant part:
Mandatory Disclosure. In addition to disclosures required by provisions of law other than MCL 767.94a; MSA 28.1023(194a), a party upon request must provide all other parties:
(1) the names and addresses of all lay and expert witnesses whom the party intends to call at trial;
(2) any written or recorded statement by a lay witness whom the party intends to call at trial, except that a defendant is not obliged to provide the defendant's own statement;
(3) any report of any kind produced by or for an expert witness whom the party intends to call at trial;
(4) any criminal record that the party intends to use at trial to impeach a witness;
(5) any document, photograph, or other paper that the party intends to introduce at trial; and
(6) a description of and an opportunity to inspect any tangible physical evidence that the party intends to introduce at trial. On good cause shown, the court may order that a party be given the opportunity to test without destruction such tangible physical evidence. [MCR 6.201(A).][[6]]
*259 The videotape of the booking room does not fall within any of the types or categories of evidence described in the rule, and, therefore, it was not subject to mandatory disclosure under MCR 6.201(A).
Also, the videotape of the booking room is not subject to disclosure under MCR 6.201(B) because it does not fall within any of the categories of discoverable evidence.[7] Further, defendant did not claim, much less show, that the videotape was exculpatory and that the prosecution knew about it. Defendant failed to present an argument, much less evidence, to establish that anything on the tape would have been favorable to him or that the officer improperly prepared for or administered the tests. Accordingly, the prosecution did not violate any discovery rule when it failed to turn over the videotape upon defendant's request.

B. Good Cause
MCR 6.201(I) states that, on good cause shown, a court may order a modification of the requirements of the discovery rule. However, at the preliminary examination on November 3, 2004, defense counsel merely complained to the district court that she had learned that a videotape might exist and that the prosecution had failed to produce it, and she asked the court to compel its production. It is axiomatic that the failure to produce evidence that does not fall within any category of discoverable evidence does not constitute good cause to support a discovery order. Phillips, supra at 592-593, 663 N.W.2d 463. As the Phillips Court explained:
Because a party is not obligated to disclose reports that do not exist, the fact that defendant did not disclose such reports does not constitute "good cause" to modify the requirements of MCR 6.201(A). We recognize that there may be circumstances where good cause does exist to permit a trial court to compel a party to create expert witness reports. For example, good cause may exist when a trial court believes a party is intentionally suppressing reports by an expert witness. However, such circumstances are not present here. [Id.]
Notwithstanding that there was no showing of good cause to support an order requiring the discovery of evidence to which defendant was not otherwise entitled, the district court ordered the prosecution to make it available to defense counsel. This decision constituted a misapprehension of or disregard for the criminal discovery rules. Id.
Nonetheless, after the district court orally ordered the production of the videotape, the parties learned that it had already been recorded over and was, therefore, unavailable. Defense counsel moved to suppress the DataMaster test results as a sanction for the prosecution's alleged *260 failure to comply with the discovery order. The district court heard testimony from a Rochester police sergeant who was in charge of the station's recording equipment. He testified that the system had been recently installed and that they had had numerous problems with it because it would record over tapes at inconsistent intervals. Defense counsel argued that she needed the videotape to meaningfully cross-examine the officer who conducted the DataMaster tests. Defense counsel urged the district court to rule that the Rochester Police Department's failure to notify the Oakland County Sheriff's Department about the availability of the videotapes constituted bad faith per se. The district court made the following ruling:
There is an obligation on behalf of the Prosecutor's Office to request the information. The demand for discovery was made. That request specifically outlined a videotape for post arrest activity, including booking procedures, which was not made to the police agency by virtue of the admission of the prosecutor today.
Therefore, the Court is going to grant the motion to the extent that I'm going to suppress any Breathalyzer results at this point.
This ruling constituted an abuse of discretion. At the time, MCR 6.201(J) permitted a court, in its discretion, to "order that testimony or evidence be excluded" for a party's failure to comply with the discovery rule. However, for the reasons stated, defendant was not entitled to discovery of the videotape, the prosecution violated no discovery rule by failing to turn it over to defendant, and the district court had no grounds to suppress the DataMaster test results.[8] In any case, the district court ruled that, even absent the test results, the prosecution had presented sufficient evidence to bind defendant over as charged.
In the circuit court, defense counsel filed a motion to quash the information and argued that the prosecution had presented insufficient evidence that defendant was intoxicated. In response, the prosecution argued that the district court had adequate evidence to bind defendant over and moved to reverse the district court's suppression of the DataMaster test results. In an order signed February 7, 2005, the circuit court denied defendant's motion to quash the information and denied the prosecution's motion to reverse the suppression ruling. Defense counsel then filed a motion to dismiss the charge against defendant, and the prosecution moved for an evidentiary hearing with regard to whether the DataMaster results could be admitted at defendant's criminal trial. The circuit court granted the prosecution's motion for an evidentiary hearing, and, thereafter, the parties stipulated that the court should review the transcripts of the evidence presented to the district court with regard to the booking room videotape. On August 11, 2005, the trial court signed an order that denied the prosecution's motion to admit the DataMaster results. The circuit court cited MCR 6.201(J) as the basis for its ruling and relied on the district court's conclusion that the prosecution had failed to comply with the discovery rules.[9]
*261 Again, for the reasons stated, this ruling constituted an abuse of discretion because the prosecution did not violate MCR 6.201 and, therefore, the sanction of exclusion was not available under MCR 6.201(J).[10] Accordingly, we reverse *262 the circuit court's order that affirmed the district court's suppression of the DataMaster evidence and excluded it from trial, and we remand for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] Again, importantly, defendant was arrested and booked on September 29, 2004, and the tape may have been recorded over as early as October 1, 2004, or certainly by October 13, 2004, long before defendant's preliminary examination on November 2, 2004.
[2] In civil cases, "[p]arties are permitted to obtain discovery regarding any matter, not privileged, that is relevant to the subject matter of the lawsuit, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of another party." Cabrera v. Ekema, 265 Mich.App. 402, 407, 695 N.W.2d 78 (2005).
[3] MCR 2.302(B)(1).
[4] "There is no general constitutional right to discovery in a criminal case." People v. Elston, 462 Mich. 751, 765, 614 N.W.2d 595 (2000). Moreover, due process requires only that the prosecution provide a defendant with material, exculpatory evidence in its possession. People v. Stanaway, 446 Mich. 643, 666, 521 N.W.2d 557 (1994).
[5] As noted, due process also requires that the prosecution turn over known exculpatory evidence. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Stanaway, supra at 666, 521 N.W.2d 557. This is also contemplated in the court rule, MCR 6.201(B)(1).
[6] MCR 6.201 applies to discovery in the district and circuit courts of this state. See People v. Sheldon, 234 Mich.App. 68, 70-71, 592 N.W.2d 121 (1999); People v. Pruitt, 229 Mich.App. 82, 87-88, 580 N.W.2d 462 (1998). We recognize that, in Administrative Order No. 1999-3, our Supreme Court made clear that, contrary to a statement in Sheldon, MCR 6.201 applies only to felony cases. While, as a multiple offender, defendant Greenfield was clearly charged with a felony in this case, we reiterate for the bench and bar that MCR 6.201 does not apply to misdemeanor cases.
[7] MCR 6.201(B) provided at the time that a prosecuting attorney must disclose evidence under other circumstances:

Discovery of Information Known to the Prosecuting Attorney. Upon request, the prosecuting attorney must provide each defendant:
(1) any exculpatory information or evidence known to the prosecuting attorney;
(2) any police report concerning the case, except so much of a report as concerns a continuing investigation;
(3) any written or recorded statements by a defendant, codefendant, or accomplice, even if that person is not a prospective witness at trial;
(4) any affidavit, warrant, and return pertaining to a search or seizure in connection with the case; and
(5) any plea agreement, grant of immunity, or other agreement for testimony in connection with the case.
[8] We do not decide in this opinion whether such videotapes should be subject to mandatory discovery. Videotapes of chemical test procedures may be helpful in defending drunken driving cases. However, the authority to define the scope of the procedural rules in this state rests exclusively with our Supreme Court, and we will not expand the scope of MCR 6.201 here.
[9] Further, defendant made no showing that the evidence was exculpatory under Brady, and, though the exculpatory nature of the evidence could only be speculative at best, defendant failed to show that the police destroyed the videotape in bad faith, see Arizona v. Youngblood, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), and People v. Huttenga, 196 Mich.App. 633, 642-643, 493 N.W.2d 486 (1992). Our decision in this case would be different if defendant could show that the prosecution was engaged in gamesmanship or in a deliberate attempt to conceal evidence. Here, however, defendant makes no allegation of any such conduct on the part of law enforcement or the prosecution.
[10] Moreover, even were we to conclude that a discovery violation occurred, we would hold that the exclusion of the DataMaster test results constitutes an abuse of discretion. "When determining the appropriate remedy for discovery violations, the trial court must balance the interests of the courts, the public, and the parties in light of all the relevant circumstances, including the reasons for noncompliance." People v. Banks, 249 Mich.App. 247, 252, 642 N.W.2d 351 (2002). Further, the complaining party must show that the violation caused him or her actual prejudice. People v. Davie (After Remand), 225 Mich.App. 592, 598, 571 N.W.2d 229 (1997). We review for an abuse of discretion whether a trial court correctly excludes evidence because of an alleged criminal discovery violation. MCR 6.201(J).

Unquestionably, a trial court has the inherent power to control the admission of evidence in order to promote the interests of justice. People v. Taylor, 159 Mich.App. 468, 483, 406 N.W.2d 859 (1987). Yet it is equally true that the exclusion of otherwise admissible evidence is an extremely severe sanction that should be limited to egregious cases. Id. at 482-483, 487, 406 N.W.2d 859. Further, "[t]he trial court must also recognize that it `has ample discretionary powers other than preclusion' . . . ." Id. at 482, 406 N.W.2d 859, quoting People v. Merritt, 396 Mich. 67, 79, 238 N.W.2d 31 (1976). Moreover, "[a] remedy which would put the objecting party in a better position than he would have enjoyed had disclosure been timely made would seem of dubious value, particularly if it does violence to other legitimate interests in the case." Taylor, supra at 487, 406 N.W.2d 859.
The facts here simply do not justify the use of the extremely severe sanction of exclusion. The record reflects that, by the time any of the parties knew about the existence of the tape, it had already been recorded over. Further, any premature destruction of the video recording by the Rochester police was inadvertent and was caused by the automated, computerized recording system rather than any deliberate act. At best, this amounts to negligence rather than bad faith on the part of the prosecution or the police.
Moreover, the exclusion of the DataMaster test results puts defendant in a better position than if the videotape had been disclosed. Clearly, defendant benefited from the exclusion of the incriminating test results because they definitively established that his blood alcohol content exceeded the level permitted under the OUIL statute. MCL 257.625(1)(b). Further, it is pure conjecture to assume that anything on the tape would have been favorable to defendant, and defendant, who is in the best position to do so, failed to assert any facts to suggest that the officer did not properly conduct the tests.
Defendant has also not shown that he suffered any prejudice as a result of the tape's destruction. The video recording was not the only evidence to support the admission of the DataMaster evidence; the preliminary breath test administered at the scene of arrest, as well as the testimony of the arresting officer, supported both the administration of the DataMaster tests and defendant's OUIL charge. Further, as noted, defendant has not alleged or shown that the officer who administered the tests failed to follow proper testing procedures, and he has not argued that any other facts would call into question the reliability of the test results. Simply put, the interests of the courts, the public, and the parties do not support the drastic sanction of suppressing the evidence in this case.
As the prosecution argued to the trial court and on appeal, if a discovery violation occurred, there were also alternative, less radical sanctions that could have remedied the nonproduction of the videotape. For example, at trial, the court could have allowed defense counsel to introduce evidence about the recording and the circumstances surrounding its destruction, and defense counsel could then have urged the jury to draw negative inferences from the tape's destruction. Similarly, defense counsel could then have undermined the testimony of the officer who conducted the DataMaster tests by cross-examining him about the recording system and the destruction of the recording. Moreover, upon a proper showing, the trial court could have instructed the jury to draw negative conclusions about the missing evidence. In brief, were there a discovery violation, the trial court clearly could have and should have fashioned a remedy other than the severe sanction of excluding the test results.