## A09A0189. CARTER v. THE STATE.
### (677 SE2d 792)

JOHNSON, Presiding Judge.

Following a bench trial, Steve Carter was found guilty of possession of cocaine with intent to distribute. Carter appeals, alleging the trial court erred in denying his motion to suppress and in admitting the crime lab test results. We find no error and affirm Carter's conviction.

1. Carter contends the trial court erred in denying his motion to suppress because he was illegally seized at the scene, and the contraband was recovered after the illegal seizure took place. However, for the reasons discussed below, we find that the trial court properly denied Carter's motion to suppress.

When reviewing a trial court's order on a motion to suppress, we must construe the evidence most favorably to uphold the findings and judgment of the trial court.[1] Moreover, "the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous and will not be disturbed if there is any evidence to support them."[2]

Viewed in that light, the record shows that a police officer stopped a car driven by Jimmy Goodman because Goodman made an improper left turn. Carter was a passenger in the car. Following the traffic stop, the officer arrested Goodman for driving on a suspended

---

[1] *Welchel v. State*, 255 Ga. App. 556, 557 (565 SE2d 870) (2002).

[2] (Citations and punctuation omitted.) *Alex v. State*, 220 Ga. App. 754 (1) (470 SE2d 305) (1996).

license and because he had an active warrant for his arrest. Goodman was handcuffed and placed in the officer's patrol car. The officer then returned to Goodman's car to explain the situation to Carter and let him know the car would be towed. He did not want to leave Carter on the side of the road with no way to get home, and Carter could not stay in the car. Because the incident occurred at night, the officer asked Carter to step out of the car and to the front of his patrol car, where the headlights illuminated the area.

As Carter stepped out of the car, he put his right hand in his right pants pocket. The officer felt unsafe and asked Carter to take his hand out of his pocket and put both hands on the hood of the patrol car. When Carter removed his hand from his pocket, the officer noticed that he had a purple cigar tube in his hand. Carter dropped the tube on the ground and kicked it under the patrol car. Carter then placed his hands on the patrol car. Because the officer's only set of handcuffs were being used on Goodman, who was already in the patrol car, the officer called for a backup officer so that he could investigate the dropped item. Carter remained with both hands on the patrol car for three or four minutes until a backup officer arrived at the scene. When the backup officer arrived, the officer arrested Carter, placed him in handcuffs, and put him in the patrol car while he investigated the dropped item. Inside the recovered tube were five white rocks that later tested positive for cocaine.

Contrary to Carter's argument, a law enforcement officer may question an individual, even when the officer has no basis for suspecting unlawful activity, as long as the officer does not convey a message that compliance with his request is required.[3] Here, the officer testified that he asked Carter to exit the car and walk to the front of the patrol car so he could let Carter know what was happening. Though the officer had no basis for suspecting unlawful activity, Carter could not remain in the car because it was going to be towed, and the officer did not want to leave Carter on the side of the road without a way to get home. In addition, it was dark, so the officer believed it would be better to talk in front of the patrol car, where the headlights illuminated the area. The officer's direction was reasonable given the circumstances.

We further reject Carter's contention that he was a passenger "who had done nothing wrong" and "[t]he officer had no reason to believe he was armed and dangerous." Law enforcement officers are permitted to protect themselves from harm even when conducting a

---

[3] *Pace v. State*, 219 Ga. App. 583, 586 (466 SE2d 254) (1995) (a tier one encounter involves communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment).

noncoercive lawful stop. "The risk of injury justifies reasonably tailored protective reaction to a citizen's threatening action even in 'tier-one' investigative encounters."[4] Here, Carter's action in putting his hand in his pocket while walking in the dark toward the front of the officer's car made the officer fear for his safety, especially since he was the only officer on the scene. The officer's direction that Carter take his hand out of his pocket and place both hands on the hood of the police car was a reasonable protective measure under the circumstances.

After Carter took his hand out of his pocket, dropped the tube, and kicked it under the car, it was reasonable for the officer to detain Carter with his hands on the hood of the patrol car until backup arrived and allowed the officer to investigate the tube that Carter had kicked under the car. At this point, the situation had escalated to a stage two brief seizure supported by reasonable suspicion.[5] And given that the officer's handcuffs were already being used, that another individual was already in the officer's patrol car, and that there were no other officers at the scene, the officer had no choice but to wait approximately four minutes before investigating the tube that had been kicked under the car. The trial court did not err in denying Carter's motion to suppress the evidence in this case.

2. Carter maintains the trial court erred in admitting the state crime lab test results since the state failed to call the technician who tested the substance as a witness at trial. According to Carter, because the testifying expert did not perform any of the testing herself, the test results are inadmissible hearsay. We review a trial court's evidentiary rulings for abuse of discretion.[6]

The record shows that during the bench trial in this case, the state called Lori Reeves to testify as the crime lab expert. She stated that two tests were performed on the substance submitted in this case and those two tests were the gas chromatography/mass spectrometry test and a thin layer chromatography test. Both tests are widely accepted as being reliable, and both tests were positive for cocaine. On cross-examination, Reeves admitted that she did not actually perform the tests, but stated that she analyzed and interpreted the data generated from the tests conducted by a lab technician. While Reeves did not stand over the technician and watch her run the tests, Reeves testified that there are a series of checks and balances that are done in every case, including this one. According to Reeves, these checks and balances prohibit tampering and include

---

[4] Id. at 585.

[5] Id.

[6] See *Byrd v. State*, 261 Ga. App. 483 (583 SE2d 170) (2003).

the following: (1) the chemist completes a submission form that includes case numbers which correspond with numbers on the vials and numbers on the tray, (2) the person who loads the instrument cannot unload it, (3) the chemist is the only one that can view the data from the instrument to ensure that everything matches and the tests correspond to the results, (4) the gas chromatography/mass spectrometry instrument is a fully-automated machine, (5) quality controls are performed daily, and (6) every sample must test positive on two different types of tests. Carter objected to the admission of the evidence, but his objection was overruled. We find no error.

It is well established that an expert may base his opinion on hearsay: "the presence of hearsay does not mandate the exclusion of the testimony, but rather goes to the weight the testimony is to be given, which is a question for the jury."[7] In cases directly involving the issue of expert testimony using lab technician reports and data, we have previously held that where an expert personally reviews data collected by the lab technician,

> the expert's opinion is not objectionable merely because it is based, in part, on the other's findings. Even when an expert's testimony is based on hearsay, the expert's lack of personal knowledge does not mandate the exclusion of the opinion but merely presents a jury question as to the weight which should be accorded the opinion.[8]

Here, Reeves testified regarding the reliability of the tests run and the procedures used to establish that the substance tested was the substance provided by the arresting officer. In addition, there is no dispute that Reeves reviewed the data and came to an independent opinion that the substance tested was cocaine. The trial court did not err in admitting the state crime lab test results into evidence.[9]

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED APRIL 23, 2009.

*Richard Parker*, for appellant.

---

[7] (Citation omitted.) *Brewer v. State*, 280 Ga. 18, 20 (2) (622 SE2d 348) (2005).

[8] (Citations omitted.) *Dunn v. State*, 292 Ga. App. 667, 671-672 (1) (665 SE2d 377) (2008) (expert rendered opinion based on lab technician's data report); see also *Byrd*, supra at 484 (expert testified based on his observations of data collected by lab technician).

[9] *Dunn*, supra; *Byrd*, supra.

*Joseph K. Mulholland, District Attorney, J. Brian Rutland, Assistant District Attorney,* for appellee.