## A10A1655. THE STATE v. SMITH.
(707 SE2d 560)

DILLARD, Judge.

Elvis Smith was indicted on one count of robbery by force[1] and one count of kidnapping,[2] based on his alleged participation in the hijacking of an automobile and the abduction of one of its occupants. Thereafter, Smith moved to suppress evidence that the victims identified him from photographic lineups and to preclude the same victims from identifying him at trial. Without holding an evidentiary hearing, the trial court granted Smith's motion, finding that the State failed to proffer any evidence to support the admissibility of the identifications despite being given an adequate opportunity to do so. The State appeals, arguing that the trial court erred in granting Smith's motion to suppress the photographic and in-court identifications without first holding an evidentiary hearing. For the reasons set forth infra, we vacate the trial court's order granting Smith's motion to suppress, and remand the case for additional proceedings consistent with this opinion.

Here, the evidence shows that in the early morning hours of July 27, 2007, police responded to a report of an automobile hijacking and kidnapping in downtown Atlanta. Upon arriving at the scene, the police spoke with a young male, who claimed that after leaving a nightclub, he and his sister were followed to their car by three African-American males—two of whom were later identified as Corey Lakes and Elvis Smith. And before the siblings could drive away, Smith allegedly climbed into the passenger seat of the car on top of the driver's sister and refused to exit the vehicle. According to the brother, he then got out of the car and attempted to remove Smith from the vehicle; but as he did, Lakes jumped into the now vacant driver's seat and drove away with his sister and Smith still in the automobile. Within a few hours, the driver's sister called police on her cell phone after being released by her captors on a dirt road several miles away from the scene of the hijacking. She reported to the police that Lakes had forced her to withdraw money from several ATMs and raped her.

Shortly thereafter, police spotted the stolen car in another part of town. After a brief high-speed chase, the police forced the car to stop and arrested Lakes, who was driving the vehicle, and Smith. A few days later, the victims met with police to view a photographic lineup of possible suspects, and both of them identified Lakes and Smith as the men who hijacked their vehicle.

---

[1] OCGA § 16-8-40 (a) (1).
[2] OCGA § 16-5-40 (a).

On January 29, 2008, Smith moved to suppress the photographic-lineup identifications and any in-court identifications. The matter then came up for a hearing on November 17, 2009, at which time the prosecutor for the State claimed that Smith's motion had not been properly served on her office, and she was, therefore, not prepared to argue against it. Smith's counsel countered that she had properly served the prosecutor's office with the motion,[3] and then requested that the trial court either dismiss the indictment or grant the motion. The trial court advised Smith's counsel that while it could not dismiss the case, it could grant the motion to suppress. In response, the prosecutor requested that the trial court not grant the motion to suppress, noting:

> It's an evidentiary motion. Had I been aware of having been served with that motion, then I would have subpoenaed the victim. I have spoken to the victim. The victim is local. Her brother, who was with her at the time, is not local. He resides out of state. But the victim of the alleged kidnapping and robbery in this case is a local victim and I would have subpoenaed her to have been here.

At the conclusion of the hearing, the trial court issued no ruling, but stated that it would take the matter under advisement.

On February 8, 2010, the trial court again conducted a hearing on Smith's motion to suppress. During this hearing, the trial court found that the motion had been properly served upon the prosecutor's office, that the State was not ready to proceed in opposition to the motion at the previous hearing, and that, "given the evidence that's been brought forward," it was appropriate to grant the motion without holding an evidentiary hearing. The State's prosecutor immediately moved for reconsideration of this ruling, and in doing so noted that the suppression of the photographic and in-court identifications concerned an issue that was "very substantial." The trial court advised the prosecutor that it would not revisit the matter, but would instead give the State "an opportunity to resolve the case." In

---

[3] Defense counsel also claimed during the November 17, 2009 hearing that the trial court's consideration of Smith's motion to suppress had already been delayed by the State's inability to proceed on one or more previous occasions, but the appellate record does not appear to support this contention. But even if such evidence is to be found somewhere in the record before us, Smith chose not to file a responsive brief, and as such we decide this appeal based on the State's Statement of Facts, which we accept as true for purposes of this appeal, *see* Ga. Ct. App. R. 25 (b), and which does not support Smith's characterization of the proceedings below.

doing so, the trial court made the following remarks to counsel:

> *Quite frankly, I do believe that the defendant's motion [to suppress] is meritorious*, given the fact that the State had the opportunity to get its witnesses here. I think the motion was properly set down, and it just didn't materialize on behalf of the State. The offer—There was an offer of probation made with respect to the robbery and dead docketing of the kidnapping previously. *I assume that the State made that offer for a reason.* You know the case better than I do because I don't really recall many of the facts of the case. I do know that we tried the co-defendant.[4]
>
> I will give the State an opportunity to huddle with [Smith's counsel] and talk about it. Try and resolve the case, and we will see where we go from there.

At this point, the prosecutor advised the trial court that she had prepared for an evidentiary hearing, and noted that the investigating officer and two victims were in the courtroom and prepared to testify on behalf of the State in opposition to the motion to suppress. The trial court informed the prosecutor that it was not "inclined to [hold an evidentiary hearing] at that time," and then directed the parties to discuss resolution of the case.

Unsurprisingly, the prosecutor and defense counsel were unable to reach an agreement. The trial court then reaffirmed its decision to grant Smith's motion to suppress, and in doing so noted that it would "include any and all . . . out-of-court as well as in-court identifications of the defendant." The prosecutor, once again, pleaded with the trial court to reconsider its ruling:

> There was no recordation of any motions having been filed on any district attorney. So I was operating under the assumption that our office had not been served copies of the motion. However, since that time I have looked at the co-defendant's . . . trial file folder, and I discovered that there was, in fact, in that defendant's file, a copy of the motions, the same exhibit that counsel has tendered [i.e., the motion to suppress].
>
> However, I will state in my place I was not aware of that. And then, in good faith, I assumed that we had not been

---

[4] (Emphasis supplied.)

properly—We being the District Attorney's Office, had not been properly served with the motion or I wouldn't [sic] have subpoenaed the victim, who . . . has always been local since the time of their indictment. The detective has always been with the Atlanta Police Department. He has since retired, but is still local. And the brother who is currently local, at one time was out of state, but we have always had contact information for him. *So there would have been no reason the State would not have been prepared, other than in good faith. I honestly believed that the State had not been served with copies of the motion. . . . So, you know, the State has now been prejudiced as a result.*

But, Judge, when I filed the motion for reconsideration, it was just asking for the Court to allow the State to present [sic] evidentiary hearing of evidence before the Court. Those victims . . . were present today as well as [the detective] who conducted the photographic lineup as well as what the State would expect the in-court ID [to show, and this testimony is] very crucial to the case. . . .[5]

Notwithstanding this impassioned plea, the trial court granted Smith's motion to suppress without holding an evidentiary hearing, finding that the State failed to proffer any evidence to contest the motion (even though the State was ready and prepared to do just that at the February 8, 2010 hearing). This appeal follows.

1. We first address the issue of whether we have jurisdiction over this appeal. It is well established that "[t]his Court has a duty to inquire into its jurisdiction to review the errors alleged on appeal,"[6] and it is a duty that we do not take lightly.[7] And after conducting such an inquiry in this matter, we find that despite the admittedly unique circumstances involved, we have jurisdiction over this appeal.

Under OCGA § 5-7-1 (a) (4), the State may appeal directly "[f]rom an order, decision, or judgment suppressing or excluding evidence illegally seized or excluding the results of any test for alcohol or drugs in the case of motions made and ruled upon prior to the impaneling of a jury or the defendant being put in jeopardy. . . ."

---

[5] (Emphasis supplied.)

[6] *Coleman v. State*, 305 Ga. App. 680, 680 (700 SE2d 668) (2010) (citation and punctuation omitted); *see also Miller v. State*, 264 Ga. App. 801, 802 (592 SE2d 450) (2003) (same).

[7] *Cf. Salazar v. Buono*, ___ U. S. ___ (130 SC 1803, 1828, 176 LE2d 634) (2010) (Scalia, J., concurring) ("[A]dhering to . . . limits upon our jurisdiction respects the authority of those whom the people have chosen to make and carry out the laws.").

Addressing this statute[8] in *State v. Strickman*, the Supreme Court of Georgia deemed "the enactment of the appeal statute to be remedial in nature, so that an error committed by a trial judge, which otherwise might work a miscarriage of justice, can be corrected on appeal, and *before* attachment of jeopardy," and further noted that, "[b]eing remedial in nature, it should be construed liberally."[9] In that same opinion, the Supreme Court held that "if a defendant moves before trial to exclude evidence on the ground that it was obtained in violation of law, the grant of such a motion—whatever its name—is subject to direct appeal on the part of the state."[10]

Here, Smith filed a motion to suppress identifications on the ground that they were obtained as a result of an improper photographic lineup, and the State had the burden of showing that this lineup was lawful.[11] However, during the final hearing on Smith's motion, as discussed supra and infra, the trial court refused to allow the State to present evidence to contest the motion as a means of sanctioning it for prosecutorial conduct that the court deemed to be dilatory in nature. Moreover, during the hearing, the trial court remarked to counsel: "Quite frankly, I do believe that the defendant's motion [to suppress] is meritorious."[12] Furthermore, the trial court's written order granting Smith's motion to suppress noted that "the State failed to put forth any evidence in this matter either in support of or counter to [the motion]." Thus, the trial court either (1) granted the motion to suppress as an improper sanction, or (2) denied the State the opportunity to proffer evidence in opposition to the motion as a sanction, and then granted the motion because the

---

[8] The previous version of OCGA § 5-7-1 (4) (1984) contained language that was nearly identical to the language currently contained in OCGA § 5-7-1 (a) (4). *See* Ga. L. 1994, p. 311, § 1.

[9] 253 Ga. 287, 288 (319 SE2d 864) (1984).

[10] *Id.*

[11] *See, e.g., Clark v. State*, 279 Ga. 243, 245 (4) (611 SE2d 38) (2005) (holding that State met its burden of proving that a photographic lineup was not impermissibly suggestive); *Newkirk v. State*, 155 Ga. App. 470, 472 (2) (270 SE2d 917) (1980) (holding that denial of defendant's motion to suppress did not shift burden placed upon State to show that pretrial identification was not tainted or impermissibly suggestive).

[12] When a trial court issues a summary order, an examination of the accompanying hearing transcript can, in some cases, provide this Court with a means of ascertaining or clarifying the trial court's underlying reasoning. *See Cates v. Jamison*, 301 Ga. App. 441, 442 (687 SE2d 675) (2009) (looking to the hearing transcript in order to determine that "the contents of the final order were dictated by the trial court . . ."); *Appling v. Tatum*, 295 Ga. App. 78, 82 (670 SE2d 795) (2008) (noting that "the trial court's order and the hearing transcript . . . clearly set forth the manner in which the child support award was determined"); *Beck v. State*, 216 Ga. App. 532, 536 (1) (455 SE2d 110) (1995) ("In considering the denial of the motion to suppress, we may consider both the transcript on the hearing and the trial transcript."); *State v. Lavell*, 214 Ga. App. 525, 525 (448 SE2d 270) (1994) (examining hearing transcript to determine basis for trial court's decision to grant the defendant's motion to suppress).

State's inability to introduce such evidence precluded it from satisfying its burden of showing the legality of the photographic lineup. In either event, the State's direct appeal is from an order that (1) was issued prior to the impaneling of a jury or Smith being put in jeopardy, and (2) granted Smith's motion to suppress evidence that was allegedly obtained in an illegal manner, and which the trial court deemed "meritorious" even apart from the prosecutor's supposed dilatory conduct. Consequently, we conclude that the State's direct appeal was authorized by OCGA § 5-7-1 (a) (4).[13]

The dissent contends that this Court lacks jurisdiction to hear this appeal, arguing that the trial court granted Smith's motion to suppress primarily as a means of sanctioning the State's prosecutor for her allegedly dilatory conduct, and that, for this reason, the trial court's order cannot properly be characterized as the grant of a motion to suppress unlawfully obtained evidence under OCGA § 5-7-1 (a) (4). In support of its argument, the dissent cites the Supreme Court of Georgia's opinion in *Berky v. State*, which held that OCGA § 5-7-1 (a), generally, should be construed strictly against the State.[14] The dissent argues that *Berky* further held that in determining whether a trial court's order is subject to direct appeal, the focus is "not upon the terminology used by the court, but upon the substance of the trial court's action."[15] Additionally, the dissent maintains that in light of the fact that our Supreme Court's opinion in *Berky* is more recent in time than *Strickman*, the holding in *Strickman*—that the statute delineating when the State can appeal in a criminal case should be construed liberally—is no longer controlling.[16]

In addressing the dissent's concerns, we first note that the transcript from the final hearing on Smith's motion to suppress provides us with at least a modicum of evidence that the trial court granted the motion, in part, on substantive grounds (i.e., that the identifications were unlawfully obtained). Specifically, the trial court indicated that it believed Smith's motion to suppress to be "meritorious." And while the trial court noted immediately thereafter that

---

[13] *See Strickman*, 253 Ga. at 288; *State v. Morrell*, 281 Ga. 152, 152 (2) (635 SE2d 716) (2006) ("It is undisputed that the State has a right to appeal from an order granting a motion to suppress a defendant's statement."); *Van Auken v. State*, 304 Ga. App. 802, 805, n.2 (697 SE2d 895) (2010) ("The state is only authorized to appeal from the *grant* of a motion to suppress.").

[14] *Berky v. State*, 266 Ga. 28, 29-30 (463 SE2d 891) (1995).

[15] *Id.* at 29 (punctuation omitted).

[16] *See Massey v. Butts County*, 281 Ga. 244, 246, n.2 (637 SE2d 385) (2006) (holding that in light of the repeal of the "full bench" rule, when there is a conflict in its decisions on a particular subject, "the more persuasive rule is that which is later in time" (citation and punctuation omitted)).

this belief was based on "the fact that the State had [a previous] opportunity to get its witnesses here," the court also went on to state that "[t]here was an offer of probation made with respect to the robbery and dead docketing of the kidnapping previously[, and] *I assume that the State made that offer for a reason.*"[17] This latter statement strongly suggests that the trial court believed Smith's motion to suppress had substantive merit, and we conclude this is more than enough to satisfy *Berky* and its progeny's strict jurisdictional test.[18]

But even if we are mistaken in our understanding of the trial court's holding, *Strickman* still compels us to exercise jurisdiction over the State's appeal. To begin with, *Strickman* has never been explicitly overruled or even disapproved of by the Supreme Court of Georgia. Indeed, our Supreme Court continues to cite *Strickman*, and has done so despite recognizing that the decision is in tension with *Berky*.[19] It is also worth noting that the specific language upon which the dissent relies in *Berky* has a rather interesting history. Specifically, *Berky's* admonition to construe "OCGA § 5-7-1 (a) strictly against the State" originated directly from a case that the *Strickman* Court explicitly disapproved of in its opinion.[20] Furthermore, unlike *Berky*, which specifically involved an interpretation of OCGA § 5-7-1 (a) (1), the Supreme Court's opinion in *Strickman* specifically construes the prior version of OCGA § 5-7-1 (a) (4) at issue in this case. Therefore, while we agree with the dissent that

---

[17] (Emphasis supplied.)

[18] *See State v. Kramer*, 260 Ga. App. 546, 547 (1) (580 SE2d 314) (2003) (noting that while the State "may not appeal the exclusion of evidence which is based only upon some general rule of evidence[,]" it may, nevertheless, "appeal an order . . . based upon general rules of evidence *and* a determination that the evidence was illegally obtained"); *State v. Pastorini*, 226 Ga. App. 260, 260 (486 SE2d 399) (1997) (holding that this Court had jurisdiction over State's appeal because the motion to suppress "at least in part was granted on the grounds that the evidence in question had been obtained in violation of law").

[19] *See Morrell*, 281 Ga. at 153 (2) (citing *Strickman* for the proposition that the State has the right of immediate appeal of suppression orders "so that an error committed by a trial judge, which otherwise might work a miscarriage of justice, can be corrected on appeal, and before attachment of jeopardy" (punctuation omitted)); *State v. Martin*, 278 Ga. 418, 419 (603 SE2d 249) (2004) (noting that *Berky* holds that the statute providing for appeals by the State in criminal cases should be strictly construed, but also noting that *Strickman* holds that the right of appeal provided to the State in the statute should not be frustrated by the manner in which the defendant names his motion).

[20] In support of the above-referenced language, *Berky* cites *State v. Land-O-Sun Dairies, Inc.*, 204 Ga. App. 485, 487 (419 SE2d 743) (1992). As its source, *Land-O-Sun* cites *State v. McIntyre*, 191 Ga. App. 565, 566 (382 SE2d 669) (1989), which cites to identical language in *State v. Gribble*, 169 Ga. App. 446, 446 (313 SE2d 720) (1984). However, the authority for that principle cited by *Gribble* is *State v. Clendinin*, 136 Ga. App. 303, 303 (221 SE2d 71) (1975), which *Strickman* disapproved of in its holding. *Strickman*, 253 Ga. at 288. Although resolving this apparent error is beyond the authority of this Court, its existence is worth documenting if for no other reason than to point out that the foundation upon which the dissent relies is tenuous at best.

there is unquestionably tension between *Strickman* and *Berky*, the former case controls because it deals with the *precise* statutory provision at issue here, and the doctrine of stare decisis prohibits this Court from ignoring the valid precedent of a higher court.[21]

Moreover, we conclude that even under *Berky*, the trial court's order is directly appealable, because "the substance of the trial court's action"[22] in this case was to bar the State from proffering evidence in opposition to Smith's motion to suppress, which in turn precluded the State from meeting its burden of showing that the identifications were lawfully obtained and "resulted" in Smith's "meritorious" motion being granted.[23] In this respect, the case sub judice is nothing like *Berky*, where the State was arguably attempting to do an end run around this Court's jurisdictional limitations by seeking to appeal a garden-variety evidentiary ruling.[24] Here, the State merely seeks to appeal a decision granting a criminal defendant's motion to suppress, which was based on the State's "failure" to satisfy its burden of demonstrating the legality of a photographic lineup *after* the trial court precluded the State from proffering evidence in opposition to the motion as a means of sanctioning the State's prosecutor for her allegedly dilatory conduct. The actual, substantive basis for granting Smith's motion, then, was not the prosecutor's allegedly dilatory conduct, but rather the State's "inability" to meet its burden of showing that the identifications were lawfully obtained (resulting in an implicit determination by the trial court to the contrary).[25] And the fact that the trial court was the direct cause of the State's inability to meet this burden in no way divests this Court of jurisdiction to hear its appeal pursuant to

---

[21] *See* Ga. Const., Art. VI, Sec. VI, Par. VI (1983) ("The decisions of the Supreme Court shall bind all other courts as precedents."); *State v. Jackson*, 287 Ga. 646, 658 (5) (697 SE2d 757) (2010) ("Stare decisis is an important principle that promotes the rule of law, particularly in the context of statutory interpretation, where our incorrect decisions are more easily corrected by the democratic process."); *Morse v. State*, 288 Ga. App. 725, 729 (655 SE2d 217) (2007) (noting that the outcome in that case was compelled by stare decisis); *see also* Kurt T. Lash, "Originalism, Popular Sovereignty, and Reverse Stare Decisis," 93 Va. L. Rev. 1437, 1454 (2007) (noting that "[v]ertical stare decisis refers to the binding effect of precedent on lower courts," and that "[s]erious rule of law costs would follow if lower courts were free to ignore precedent established by a higher court of appeal").

[22] *Berky*, 266 Ga. at 29.

[23] *Id.*

[24] *Id.* ("There is no basis for the State's appeal of an order granting a defendant's motion in limine on general evidentiary grounds."); *see also State v. Kramer*, 260 Ga. App. at 547 (holding that the State "may not appeal the exclusion of evidence which is based only upon some general rule of evidence").

[25] *Compare State v. Williams*, 246 Ga. 788, 789 (1) (272 SE2d 725) (1980) (noting, in discussing the substance of the trial court's decision, that "the trial judge's grant of the appellees' motion does not rest on the evidence or lack thereof adduced at trial").

OCGA § 5-7-1 (a) (4).[26]

2. The State contends that the trial court erred in granting Smith's motion to suppress the photographic-lineup and in-court identifications without first holding an evidentiary hearing. We agree.

In reviewing a trial court's ruling on a motion to suppress, an appellate court's charge is to ensure that "there was a substantial basis for the decision."[27] And while "the trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine whether the ruling was clearly erroneous," a de novo review is conducted "where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented[.]"[28] Finally, we review a trial court's evidentiary rulings for abuse of discretion.[29]

Here, the trial court clearly abused its discretion in barring the State from presenting evidence in opposition to Smith's motion to suppress, and then erred as a matter of law in granting same. Specifically, the trial court held that the State failed to proffer any evidence contesting Smith's motion to suppress in a timely manner, and did so even though the State was prepared to offer evidence in opposition to the motion at the final hearing on same (i.e., the testimony of the investigating officer and two victims). In essence, despite stating in its order that it granted the motion to suppress because the State failed to counter it, the trial court prohibited the State from proffering evidence in opposition to Smith's motion to suppress as a means of sanctioning the State's prosecutor for, in its view, contesting the motion in a dilatory manner, and then granted same because the State was then unable to satisfy its burden of showing that the identifications were lawfully obtained. In doing so, the trial court erred.[30]

No constitutional provision or statute authorizes a trial court to

---

[26] We note in passing that if the dissent is correct in its assertion that OCGA § 5-7-1 (a) (4) is to be "strictly construed" in all circumstances, and right in its claim that *Strickman* is no longer binding precedent, then this Court arguably would lack jurisdiction to entertain *any* appeal by the State under the statute involving the suppression of photographic-lineup and/or courtroom identifications, as neither, strictly speaking, constitutes "evidence illegally *seized.*"

[27] *Manders v. State*, 281 Ga. App. 786, 788 (2) (a) (637 SE2d 460) (2006) (citation omitted).

[28] *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994) (citations omitted).

[29] *See, e.g., Carter v. State*, 297 Ga. App. 608, 610 (2) (677 SE2d 792) (2009).

[30] The State notes in its appellate brief that service of the motion to suppress by Smith's counsel was "facially inadequate." While this may indeed be the case, it is entirely beside the point. Regardless of whether the motion to suppress was properly served, the trial court was not authorized to bar the State from proffering evidence in opposition to Smith's motion to suppress as a means of sanctioning the prosecutor or her office for failing to contest the motion in a timely manner.

bar the State from presenting evidence at a hearing on a motion to suppress as a sanction for prior prosecutorial conduct that the court deems to be dilatory in nature.[31] And because there is no such express authorization for what the trial court did here, its actions can only be justified, if at all, as an exercise of some inherent authority to manage its own docket.[32] But even if the inherent authority of a trial court to manage its own docket might in some circumstances permit that court to bar the presentation of evidence by the State at a hearing on a motion for which the State bears the burden of proof (an issue we need not decide today), such authority would not justify the trial court's actions in this case. Indeed, as a matter of course, "evidence exclusion is an extreme sanction and one not favored in the law."[33] For this reason, a trial court should exercise great caution before barring the State from showing why evidence it seeks to admit at trial should not be suppressed.

And here, the prosecutor offered a facially reasonable explanation for her unreadiness to present evidence at the earlier hearing (an explanation that showed good faith), even though the State admittedly made a mistake that caused it not to be prepared to proceed in opposition to the motion to suppress at the earlier hearing. Moreover, there was no evidence to rebut this explanation, and the trial court made no finding of bad faith or that Smith had been prejudiced by the delay. Additionally, the trial court's ruling did not serve any interest of judicial economy, given that the State was ready to present its evidence to counter Smith's motion at the hearing in which the court issued its ruling. And by barring the State from presenting evidence to contest Smith's motion as a means of sanctioning the State's prosecutor (which resulted in the exclusion of the victims' identifications of Smith), instead of making a finding that Smith's due-process rights were actually violated,[34] the trial

---

[31] Cf. Boykin v. State, 264 Ga. App. 836, 840 (3) (592 SE2d 426) (2003) (holding that "before the harsh sanction of excluding the evidence will be imposed by the trial court, OCGA § 17-16-6 requires the defendant to show both that he was prejudiced and that the [S]tate acted in bad faith"); State v. Luttrell, 207 Ga. App. 116, 116 (427 SE2d 95) (1993) (holding that no statutory or case authority permits dismissals of criminal cases for want of prosecution).

[32] Cf. State v. Finkelstein, 170 Ga. App. 608, 609 (2) (317 SE2d 648) (1984) (holding that "[d]iscretion in regulating and controlling the business of the court is necessarily confided in the judge, and this court should never interfere with its exercise unless it is made to appear that wrong or oppression has resulted from its abuse").

[33] State v. Conley, 273 Ga. App. 855, 855 (616 SE2d 174) (2005) (citation and punctuation omitted); see also State v. Gomez, 266 Ga. App. 423, 425 (1) (597 SE2d 509) (2004) (same); State v. Roddy, 231 Ga. App. 91, 93 (497 SE2d 653) (1998) (same).

[34] See Garlington v. State, 268 Ga. App. 264, 268 (1) (b) (601 SE2d 793) (2004) ("The test for determining whether a due process violation occurred in cases such as this is whether the identification procedure was so impermissibly suggestive as to give rise to a (very) substantial likelihood of irreparable misidentification." (citation and punctuation omitted)); Dee v. State, 273 Ga. 739, 739 (545 SE2d 902) (2001) (holding that "[a] pre-trial procedure in which either

court clearly abused its discretion and impermissibly expanded the scope of a judicially-created rule of evidence suppression far beyond its intended and limited purpose.[35] Accordingly, we vacate the trial court's order granting Smith's motion to suppress, and remand the case to the trial court for additional proceedings consistent with this opinion.[36]

*Judgment vacated and case remanded. Smith, P. J., Andrews, Mikell, Adams, and Blackwell, JJ., concur. Barnes, P. J., dissents.*

BARNES, Presiding Judge, dissenting.

This Court has the duty to raise and resolve the question of jurisdiction in all cases where there may be any doubt as to its existence. *Rocha v. State*, 287 Ga. App. 446 (1) (651 SE2d 781) (2007). Because the trial court granted the motion to suppress as a sanction for the State's dilatory conduct rather than on the substantive ground that the evidence was unlawfully obtained, we are without jurisdiction to hear the State's interlocutory appeal. Accordingly, we are required to dismiss the appeal, and I dissent from the majority opinion reaching the merits of the trial court's ruling.

Neither the United States nor the Georgia Constitution grants a

---

the victim or another eyewitness confronts the accused or views his photograph in an effort 'to elicit identification evidence is peculiarly riddled with innumerable dangers and variable factors which might seriously, even crucially, derogate from a fair trial[,]' " and that "[i]f such an identification procedure is 'so unnecessarily suggestive and conducive to irreparable mistaken identification, the defendant is denied due process of law' " (citations and punctuation omitted)).

[35] *See, e.g., Jones v. State*, 273 Ga. 213, 216 (2) (539 SE2d 143) (2000) ("When a trial court concludes that an identification procedure is impermissibly suggestive, the issue becomes whether, considering the totality of the circumstances, there was a substantial likelihood of irreparable misidentification[,]" and "[i]f not, then both the pre-trial and in-court identifications are admissible."); *Miller v. State*, 270 Ga. 741, 743 (2) (512 SE2d 272) (1999) ("It is error to allow testimony concerning a pre-trial identification of the defendant if the identification procedure was impermissibly suggestive and, under the totality of the circumstances, the suggestiveness gave rise to a substantial likelihood of misidentification."); *see also People v. Bakari*, 780 P2d 1089, 1091 (II) (A) (Colo. 1989) (holding that "[t]he district court's order granting the defendant's suppression motions did not serve the purpose of the exclusionary rule" because "the district court's suppression order could not have provided a deterrent against illegal police searches[,]" and that "the district court's order granting the defendant's suppression motions was 'tantamount to dismissing the charges against the defendant' "); *State v. Reed*, 421 So2d 754, 755 (Fla. App., Dist. 4, 1982) (holding that "[o]nly where prejudice will result to the accused should simple neglect or attorney error be sanctioned with the extreme remedy of granting a motion to suppress a confession").

[36] *See Grant v. State*, 302 Ga. App. 661, 662-63 (1) (691 SE2d 581) (2010) (remanding case for evidentiary hearing on motion to suppress after trial court incorrectly denied defendant's motion on ground that it was untimely); *see also People v. Greenfield*, 722 NW2d 254, 260-62 (IV) (B) (Mich. App. 2006) (holding that trial court abused its discretion in granting a defendant's motion to suppress as a means of sanctioning the State's prosecutor for an alleged discovery violation); *State v. Fridy*, 842 NE2d 835, 841 (Ind. App. 2006) (holding that "by using the motion to suppress as a sanction, the trial court committed error that resulted in prejudice *to the State*" (emphasis supplied)).

right of appeal to the State in criminal cases. *State v. Martin*, 278 Ga. 418, 418-419 (603 SE2d 249) (2004). Rather, the authority of the State to directly appeal an adverse ruling in the criminal context is limited to the instances expressly enumerated in OCGA § 5-7-1. *State v. Forehand*, 246 Ga. App. 590, 593 (2) (542 SE2d 110) (2000). Moreover, the provisions of OCGA § 5-7-1 must be construed strictly against the State and liberally in favor of the interests of defendants. See *Martin*, 278 Ga. at 419; *Berky v. State*, 266 Ga. 28, 30 (463 SE2d 891) (1995).

Under OCGA § 5-7-1 (a) (4), the State may appeal directly "[f]rom an order, decision, or judgment suppressing or excluding evidence illegally seized[.]" Notably, OCGA § 5-7-1 (a) (4) has been construed to authorize a direct appeal only if the trial court's exclusion of evidence was based, at least in part, "upon its determination that the [S]tate *unlawfully obtained* the evidence." (Emphasis supplied.) *State v. Lavell*, 214 Ga. App. 525 (448 SE2d 270) (1994). If the exclusion of evidence is solely based upon some other ground, such as the general evidentiary rules of admissibility, a direct appeal by the State is not permitted. See *Berky*, 266 Ga. at 28-30 (direct appeal not authorized where trial court suppressed the evidence on ground that State failed to lay a foundation for its admission); *Lavell*, 214 Ga. App. at 525-526 (direct appeal not authorized where trial court suppressed the evidence on ground that it was inadmissible hearsay). See also *State v. McKenna*, 199 Ga. App. 206, 207 (404 SE2d 278) (1991) (direct appeal not authorized where trial court suppressed the evidence on ground that the Intoximeter test printout had been materially altered); *State v. Brown*, 185 Ga. App. 701, 702 (365 SE2d 865) (1988) (direct appeal not authorized where trial court suppressed the evidence based upon its interpretation of the express stipulation entered into by the State and defendant). In determining whether a trial court's order is subject to direct appeal under OCGA § 5-7-1 (a) (4), we focus "not upon the terminology used by the court, but upon the substance of the trial court's action." (Citation and punctuation omitted.) *Berky*, 266 Ga. at 29. Thus, "even though an order is denominated as one of those which is appealable by the State," an appeal is not authorized if the order is the result of the exclusion of evidence on a ground not specifically enumerated in OCGA § 5-7-1. Id.

Here, the trial court granted Smith's motion to suppress as a sanction for the State's dilatory conduct, not on the ground that the photographic and in-court identifications were conducted in a manner that violated the law. The trial court did not hear from any witnesses; did not receive any documentary evidence; and, in fact, never conducted an evidentiary hearing at all. As such, contrary to the majority's assertion, the trial court cannot be said to have ruled

on the substantive merits of Smith's motion. Because the trial court did not exclude the evidence on the ground that the State unlawfully obtained the identification evidence, the State was without authority to pursue a direct appeal under OCGA § 5-7-1 (a) (4), and we are without jurisdiction to hear this appeal. See *State v. Evans*, 282 Ga. 63, 64 (646 SE2d 77) (2007) ("If the State attempts an appeal outside the ambit of OCGA § 5-7-1 (a), the appellate courts do not have jurisdiction to entertain it.") (citation omitted).

In concluding that jurisdiction was proper, the majority relies upon *State v. Strickman*, 253 Ga. 287, 288 (319 SE2d 864) (1984), in which the Supreme Court of Georgia held that OCGA § 5-7-1 should be construed liberally in favor of jurisdiction. *Strickman*, however, is inconsistent with the Supreme Court's later decisions in *Martin* and *Berky*, which held that OCGA § 5-7-1 should be strictly construed against the State.[37] The Supreme Court has held that, in light of the repeal of the "full bench" rule, where there is conflict in its decisions on a particular subject, "the more persuasive rule is that which is later in time." (Citation and punctuation omitted.) *Massey v. Butts County*, 281 Ga. 244, 246, n. 2 (637 SE2d 385) (2006). Accordingly, *Martin* and *Berky* control over *Strickman*. Indeed, the Supreme Court in *Martin* recognized the conflict in its precedent and narrowly construed *Strickman* as standing for the limited proposition that "the right of appeal provided to the [S]tate in the statute should not be frustrated by the manner in which the defendant names his motion," a unique circumstance that clearly does not apply to the present case. (Citation and punctuation omitted.) *Martin*, 278 Ga. at 419.

For these combined reasons, the instant appeal should be dismissed for lack of jurisdiction. In reaching this conclusion, I express neither approval nor disapproval of the trial court's ruling, and emphasize that public policy questions over whether OCGA § 5-7-1 should be expanded to allow for jurisdiction in a case such as this one are best left to our General Assembly.

DECIDED MARCH 10, 2011.

---

[37] The majority suggests that *Berky* and *Strickman* can be distinguished from one another because they involve different subsections of OCGA § 5-7-1 (a). However, neither Supreme Court decision predicates its analysis or bases its reasoning upon a particular subsection of OCGA § 5-7-1 (a); rather, both decisions refer to the statute in general terms in discussing the proper mode of construction. See *Berky*, 266 Ga. at 30 ("Construing OCGA § 5-7-1 (a) strictly against the State, as we are bound to do. . . ."); *Strickman*, 253 Ga. at 288 ("[W]e deem the enactment of the appeal statute to be remedial in nature. . . . Being remedial in nature, it should be construed liberally."). Furthermore, distinguishing *Berky* from *Strickman* in the manner suggested by the majority would have the anomalous result of requiring courts to liberally and strictly construe different subsections of the same statute.

Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Assistant District Attorney, for appellant.

Arthurlyn Combs-Hixson, for appellee.